UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

## 12 CV 01648

---------------------------------------------------x

JUAN CANDELARIA, 89-T-5069,                          :

    Plaintiff,                                       :

               -against-                   :

THE CORPORATE CITY OF NEW YORK ("NYC") DEPARTMENT    :

OF CORRECTION ("DOC") COMMISSIONER MARTIN F. HORN    :
("HORN"); NYC POLICEE DEPARTMENT ("NYCPD")'S
PATROL SERVICES BUREAU AND BALLISTIC SQUAD UNITS     :
("THE NYPD UNITS"); NYCPD OFFICER JOHN SILVA, SH. #
2671 ("SILVA"); NYCPD DET. DOMINICK VASATURO, SH. #  :
1693 (VASATURO") NYCPD SGT. ZULBERTI ("ZULBERTI");
DOCS CORRECTION OFFICER ARIAS VICTOR, SH. # 9419     :
("VICTOR"); NYC SHERIFF DEPARTMENT ("THE SHERIFF")   :
NANCY MANGOLD d.b.a. THE UNIFIED COURT SYSTEM
OF THE CITY/STTE OF NEW YORK ("UCS");                :
THE STATE OF NEW YORK ("NYS") SENATE AND ASSEMBLY    :
"THE LEGISLATURE"); 55TH GOVERNOR OF THE STATE OF NEW
YORK d.b.a. THE PEOPLE OF THE STATE OF NEW YORK      :
("THE PEOPLE"); CHARLES J. HYNES d.b.a OFFICE
OF THE KINGS CO. D.A ("DA"); NYS DEPARTMENT          :
OF CORRECTION ("DOCS") COMMISSIONER BRIAN FISCHER
("FISCHER") d.b.a AS DOCS; DOCS SENTENCING           :
REVIEW SPECIALIST HELENE C. ANTONELLI
("ANTONELLI"); NYC A.D.A. DAVID J. HIMMELBERGER      :
("HIMMELBERGER"); JEREMY D SCHWARTZ ("SCHWARTZ");
DOCS DEPUTY COMMISSIONER/CHIEF MEDICAL OFFICER       :
CARL J. KOENINGSMANN, MD ("KOENINGSMANN");
GREEN HAVEN CORRECTIONAL FACILITY ("GREEN HAVEN"),
AND JANES/JONE DOES 1-15 (RN; EMPLOYEES OF THE
DOCS; SUPERVISORY AND POLICY-MAKING PERSONNEL
OF THE STATE OF NEW YORK, DOCS, STATE OF
FLORIDA, AND OF THE CITY OF NEW YORK, AND DOCS'S C -
O''(s), et al,

    Defendants.

---------------------------------------------------x

COMPLAINT

Docket No.: _____

BENCH TRIAL DEMAND
Within Ten Days Of
Service of a
Final Pleading
Before A THREE
ARTICLE III
COURT PANEL

PRO  SE

I-THIS IS A CIVIL RIGHTS COMPLAINT Under 42 U.S.C §§ 1983, 1985, 1986

EXECUTED ON: 11/29/ 2011.
In The County of Dutchess,
State of New york

BY: PLAINTIFF JUAN CANDELARIA,
DIN # 89-T-5069, Green Haven Corr. Fac.,
Route 216, Stormville, N.Y. 12582

I

JURISDICTION IS PROPER UNDER 28 U.S.C. §§ 1331-1332-1343-1367 AND 1651:

1. This action is brought under the CIVIL RIGHTS ACT OF 1871, as codified in 42 U.S.C. §§ 1983, 1985, 1986, et seq.; The Rehailitation Act of 1973, § 504, as codified in 29 U.S.C. §§ 706, et seq. ("§504"); The Americans with Disabilities Act of 1990, Title III et seq., as codified in 42 U.S.C. §§ 12101, et seq. ("A.D.A." Or "ADA"); The End-Stage Renal Disease ("ESRD") Program underspinning § 1881 of the SOcial Security Act, as codified in 42 U.S.C. §§ 1395rr, et seq. ("The ESRD Program"); The Interstte Agreement On Detainers Act, Pub. L. No. 91-538, §§ 1-8, 84 Stat. 1397-1403 (1970), as Amended by Pub. L. No. 100-690, tit. VII, § 7059, 102 Stat. 4403 (1988) ("IADA"); New York State Common Statutes, The Rules and Regulations, Common Laws, and the Constitution of the State of Florida and of the State of New York, to protect the rights, privileges and immunities guranteede to plaintiff by the Commerce and supremacy Clauses and by the First, Fourth, Fifth, ESixth, Eighth, Thirteenth and Fourteenth amendments to the UNITED STATES CONSTITUTION and to preserve the memory of the great deliverance of Israel from death in Egypt during the Tenth Plague, to protect its SEPHARDIC [or not] Descendant from death in the United Sttes and to preserve the COVENANTS that (a):

> "YOU SHALL HAVE THE SAME LAW FOR THE STRANGER AND FOR ONE FROM YOU YOUR OWN COUNTRY,"

[Levitius 24:22 (All-caps formats added)] and (b):

> "THE DEFENDANTS, AND EACH OF THEM, HAD ACTED UNDER COLOR OF STATE LAW OR HAVE WILLFULLY AND JOINTLY PARTICIPATED WITH STATE OFFICIALS TO DEPRIVE PLAINTTIFF OF HIS CIVIL, STATUTORY, AND CONSTITUTIONAL RIGHTS,"

[see e.g. People ex rel. Battista v. Christian, 249 N.Y. 314, at 319 (N.Y. Ct. App. 1928))] and, in that context, it has been held that (1)

> "[A HOSPITAL OR DOCTOR ACTED] UNDER COLOR OF STATE LAW WHEN HE ABUSES THE POSITION GIVEN HIM BY THE STATES,"

[accords, WEST V. ATKINS, 487 U.S. 42, at 50 (1988)("ATKINS")(underlines, materials in bracket marks and All-Caps Formats added)]

## III
## INTRODUCTORY   FACTS

4. New York Penal Law § 15.20(1)(a) provides that  a person is excepted from criminal liability when the predicate for the commission of criminal activities is based  on mistaken belief on the parts of the complainant and, most signifiantly (a):

"SUCH FACTUAL MISTAKE NEGATIVES THE CULPABLE MENTAL STATE REQUIRED FOR COMMISSION OF  AN OFFENSE."

[accords N.Y. Penal Law § 15.20(1)(a)  (underlines and All-caps formats added)] and , equally significantly,  "SUCH MISTAKEN BELIEF" cand  be "FOUNDED UPON, inter alia, "A JUDICIAL DECISION OF A STTE OR FEDERAL COURT" [id., § 15.20(2)-(c))(underlines and All-caps formats added)] and, in regarding thereof, (b) following a Federal  Chief  United States District Court's finding on 6/24/99, that, in relevant parts,  (i):

"THE PETITIONER  WAS NOT CHARGED WITH POSSESSION OF THE SECOND WEAPON" [re-printed from Pg. 18 of the Federal court's 33-Pgs. Slip. Op. of 6/24/99 (underlines  and All-caps formatts added)], (c) the city/State of New York and those acting in concert with them, FOR THE FIRST TIME ON 10/23/07, turned over to Plaintiff's Defense Team [see e.g. Document Bearing Bate-Stamps numbers JC0001-JC0161, at JC0001-JC0011] NEWLY DISCOVERED INFORMATION showing that Plaintiff candelaria has neither been tried nor convicted or ever sentenced  for the presumptive  "OFFENSES" for which he had been originally   indicted under Kings CO. Indictment # 9954/87 [JC0017-JC0018] underspinning the presumptive use of a NEWLY DISCOVERED Serial # 288659LW Colt .38 Two Inch Barrel Caliber revolver which had been imputed to Plaintiff Candelaria by NYPD Officer John silva, SH. # 2671 as a "GUN RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH. # 9419" on 11/9/87, under NYPD Property clerk's  Invoice # D12747  [see e.g. Newly discovered document being proffered herein as JC0012-JC0022][hereinafter The First Weapon"].

5.    Additional Newly discovered information [see e.g. JC0021-JC0022]
documented that Plaintiff Candelaria was admitted to the custody of the
Defendant NYC DOC On "11-NOV-87" in "D[etaineer] Status and     his
"TRANSF[ER] DATE: [WAS] "12-FEB-88" under Indictment # 9954/87" and that,
upon his February 12, 1988, "DISCHARGE[] FROM: BKYN" [see e.g. Document
### JC0021-JC0022]" he was re-arrested in the State of  Florida [see e.g.
Document ## JC0152-JC@154], in the STREETS IN [HIS STATE OF] FLORIDA," his
was arrested pursuant to the request of the CITY/STATE OF NEW YORK-BROOKLYN
THEN EXTRADITED HIM, AND, VIA BROOKLYN EXTRADITING OF THE [PLAINTIFF CANDELARIA],
under the  theory that the newly discovered Serial # 288659LW Colt  .38
Caliber revolver imputed to Plaintiff candelaria on 11/9/87  as a "GUN
RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH. # 9419" NYPD Officer John
Silva, SH. # 2671 had  "Vouchered Under Voucher D12747" pressumably fired a
bullet which ballistically matched the presumptive bullet removed from
a NYC Victim's body [see e.g. Document # JC00031-JC0037, for the first
time  turned over to Plaintiff's defense team  on 5/2/ and again on 10/23/07],
plaintiff Candelaria returned to the State of New York from his Original State of
Florida on 9/4/88 [see e.g. Document # JC0031-JC0037].

6.    During the  underlying April, 1989 State Petit Jury Trial, during
which the  City/State of New York introduced, over plaintiff's objection,
a different and distinct weapon as People's Exhibits  2A ("THE SECOND WEAPON
On Evidence")-Over Plaintiff's Objection, the City-State of New York
did not, however, argued the Thory described  in ¶¶ 4-6, ante; rather, they
argued mutiple different and distinct theories of criminal liability neither of
which is trnsactionally related (in law or Fact) to the Newly discovered
Serial # 288659LW/Indictment # 9954/87 and-thus-Even accepting arguendo as
true the Stories of Plaintiff's accusers Victor/Cesar arias, Plaintiff
Candelaria cannot be affected muchless concluded, by evidence, decree, or JUDGE,

JUDGMENT, underspinning the "SECOND WEAPON" introduced in April, 1989 as
People's Exhibit 2A  and the rounds introduced as People's 2B & 3, on evidence,
none of which is  rationally connected (in law or fact) to the Newly discovered
Serial # 288659LW Colt .38 Two Inch Barrel, Caliber  Revolver, which was
imputed to Plaintiff candelaria as a "GUN RECOVERED BY CORRECTION OFFICER
ARIAS VICTOR, SH. # 9419" [JC0015, JC0033],  said to had been loaded with
the newly  discovered Serial # 288659LW (Four) Colt .38 Caliber rounds,
and there were neither forensic testimony nor other  layman proof establishing
or tending to establish that the newly discovered Serial # 288659LW [JC0015]
was capable of discharging any of the rounds, introducd as People's Exhibit
2B, on evidence  or that any of the  Four Newly discovered Serial # 288659LW
Colt .38  [JC0015] Rounds imputed to plaintiff on 11/9/87 was capable of
discharging the Loaded firearm introduced in the april, 1989 State Petit
Jury trial as Pedople's Exhibit 2A  [see e.g. ¶ 61, Post ("The Second Weapon"
on evidence)].

    7.  There were neiher DNA nor Finerprints or  palmprints  connecting
Plaintiff Candlaria to   direct or  constructive possession of a .38 Caliber
revolver on 11/9/87 or ever since plaintiff's DOB on 3/21/57 and, during the
April, 1989 State Petit Jury Trial, Plaintiff Candelaria took the stand and,
under Oath, denied  ownership possession of the "SECOND WEAPON" on
evidnce and also denied the accusation lodge against him by the City/State of
New York through the NYPD and the D.A. and, besides Victor and Cesar arias
story on4/7/89 that in the evening of 11/9/87, Plaintiff candelaria Possessed
and  attempted to display  and/or  aim at  Victor arias and Cesar arias
[Victor's Brother] grabbed from Plaintiff and turned over to Victor  One
Specific "COLT .38, LIKE A TWO INCH BARREL, BLACK COLOR" caliber revolver
there were  neither witness nor  evidence connecting Plaintiff to a .38
caliber revolver on 11/9/87 or ever in any contry of the the United STATES.

8.   Although Plaintiff had been charged, and the   City/State of N.Y.
subsequently dismissed, with commission of   a "IMITATION PISTOL" under NYC
ADMIN. code § 436-5.0(g)(1987), imputed (or not) ownership possession of a
newly discovered Serial # 288659LW Colt .38 Two Inch Barrel [JC0015]   Loaded
"GUN RECOVERED BY CORRECTION OFFICER ARIS VICTOR, SH. # 9519" [id.], with  the
Four Newly discovered Serial 3 288659LW Colt .38  Caliber Rounds [JC0015],
but INOPERABLE BECAUSE OF A FAULT   FIRING PIN, one part or another,
(a) is neither prosecutable  under Article 265 of the NY Penal Law as an
OPERABLE FIREARM, nor as   "DEADLY WEAPON" capable of causing the death of
the underlying victim [see JC0033] within the meaning and intent  of  NY Penal
Law §  15.00(1)(2) and id.,  §  10.00(11), (12) and Count One of the underlying
Supersiding Indictment # 8897/88 [JC0040-JC0041], or as a  "toy or imitation
pistol or revolver," within the meaning and intent of the NYC Administrative
Code    , and there were not evidence introduced in the april, 1989 State
Petit Jury trial establishing that either of the four Newly discovered Serial
# 288659LW [JC0015] Rounds was live and capable of discharging the newly discovered
Serial # 288659LW [JC0015] "GUN RECOVERED BY CORRECTION OFFICER ARIAS
VICTOR, SH. # 9419" [JC0016-JC0022] and, in regarding to the Newly Discovered
evidence heretofore summarized, the Defendants City/State Of New York
[through Defendant UCS] now  claimed and, indeed, conceded, in their
adoptive admission,  words and phrases, that (i) the Newly discovered evidence
merely entitled Plaintiff candelaria to a "NEW TRIAL:"

> "HABEAS CORPUS RELIEF IS UNAVAILABLE TO APPELLANT WHERE THE RELIEF TO
> WHICH APPELLANT WOULD BE ENTITLED IS A  NEW TRIAL, NOT IMMEDIATE
> RELEASE,"

[re-printed from document Bearing Bate-stamp # JC0001-JC0161, at
JC0103--JC0110 , with emphasis at JC0108 (underlines and all-caps
formats added)].

---

9.   It Is Plaintiff candelaria's  claims  that (a)

"IT HAS LONG  BEEN THE RULE IN  THIS  CIRCUIT THAT COLLATERAL
ESTOPEL  NEVER BARS  THE UNITED STATES FROM USING EVIDENCE  PREVIOUSLY
SUPPRESSED IN   STATE   PROCEEDINGS  IN WHICH THE UNITED STATES
WAS NOT  A PRTIES,"

[accords, U.S.   v.  Davis, 906  F.2d 829, at 232 (2d Cir. 1990)] and (b):

"STATE COURT RULING IN CRIMINAL TRIAL ARE NOT BINDING ON  FEDERAL
COURT, BECAUSE THE  STATE AND NATIONAL SOVERIGHTY ARE SEPARATE AND
DISTINCT FROM ANOTHER,"

[accords, U S  v.  Miller, 14  F.3d  761, at 763 (2d Cir. 1994)(underlines
and All-caps  formats  added) and (c):

"IF  COLLATERAL  ESTOPOPEDL IS EMBODIED IN THE GUARANTEE AGAINST DOUBLE
JEOPARDY, THEN ITS APPLICABILITY ... IS NOT LONGER A MATTER TO BE
L:EFT  FOR STATE COURT DETERMINATION WITHIN THE  BROAD BOUND
OF FUNDAMENTAL FAIRNESS, BUT A MATTER OF  CONSTITUTIONNAL  FACT
WE MUST DECIDE THROUGH AN EXAMINATION OF  THE ENTIRE RECORD,"

[accords, Asher   v  Suenson, 397 U.S. at  442-443, 90 S.Ct. at 1193-1194].

10.   Possession of a weapon must be  volutary in order to be culpable,

mental State, and the  the weapon must be both, loaded, and capable of

discharging live ammunition under N.Y.S. Penal Law Article 265    : consequently,

New York Penal Law § 265.03(2) provides, in relevant part, that (a):

"A PERSON IS GUILTY OF CRIMINAL POSSESSION OF A WEAPON IN THE SECOND
DEGREE WHE, WITH INTENT TO USE THE SAME UNLAWFULLY AGAINST ANOTHER:
(2) HE POSSESSES A LOADED FIREARM,"

[id., § 265.03(2)(1987)(all-caps formats and underlines added)][hereinafter

referred to as "CPW-2nd" or  "Criminal Possessin of a Weapon 2°")], and    (b)

N.Y. Penal Law § 265.02(4)(1987) provides that:

"A PERSON IS  GUILTY OF CRIMINAL POSSESSION OF A WEAPON IN THE
THIRD DEGREE WHEN:
(4)  SUCH PERSON POSSESSES ANY LOADED FIREARM. SUCH POSSESSION
SHALL NOT, EXCEPT AS PROVIDED IN SUBDIVISION ONE  OR SEVEN,
CONSTITUTE A VIOATION OF THIS SECTION IF SUCH POSSESSION TAKES PLACE
IN SUH PERSON'S HOME OR PLACE OF BUSINESS,"

[accords N.Y. Penal Law § 265.02(4)(1987)(now Repealed as of 2006)(underlines

and All-caps formats added)][hereinafter referred to as "CPW-3rd" or

Criminal Possession of a Weapon  3°].

A: The PARTIES To This 42 U.S.C. §§ 1983, 1985, 1986 Complaint:

    a: Plaintiff Juan Candelaria ("Plaintiff" or "Candelaria")

11. Plaintiff Juan Candelaria ("Plaintiff" or "Candelaria") is a Citizen of the U.S. and of the Stae of Florida and a native of the COMMONWEALTH Of PUERTO RICO and a member of the political community to which he belongs and, following his arrest in and extradition from, Miami, Florida, to the State of New York on 9/4/88, Plaintiff (a) has been denied Timely and proper Medical Attention, (b) was allowed to reach End-Stage Renal Disease ("ESRD") in 1997, (c):

> "BETWEEN 1997 AND 2007, MR. CANDELARIA WAS HOSPITALIZED MORE THAN 25 TIMES. (SEE TABLE.) NO LESS THAN 20 OF THESE ADMISSIONS WERE FOR ACCESS FOR DIALYSIS. HE RECEIVED A DECEASED DONOR RENAL TRANSPLANT IN OCTOBER 2005. HIS RECORDS INDICATES THAT HE HAS NO LARGE VEINS AVAILABLE IN HIS UPPER EXTREMITIES FOR FUTURE HEMODIALYSIS ACCESS AND THAT HE HAS FAILED PERITONEAL DIALYSIS. GIVEN THAT THE LIFE EXPECTANCY OF A DECEASED DONOR RENAL TRANSPLANT IS 10-15 YEARS, MR. CANDELARIA WOULD BE EXPECTED TO REQUIRE DIALYSIS AGAIN BY 2020. HIS PHYSICIANS' ABILITY TO MAINTAIN HIM ON DIALYSIS WILL BE SEVERELY LIMITED DUE TO THE LOSS OF MULTIPLE ACCESS POINTS PRIOR TO HIS KIDNEY TRANSPLANT."

[recited from Document Bearing Bate-Stamp # JC0000–JC0150, at JC0125 (underlines and All-caps formats added)], (d) to SUMMARIZE:

> "MR. CANDELARIA CANNOT BE EXPECTED TO LIVE FOR MORE THAN SIXTH MONTHS WHEN HE RETURNS TO DIALYSIS IN 2020,"

[reprinted from Document Bearing Bate-Stamp # JC0127 (undeerlines and All-caps formats added)], (e) without a TRIAL BY JURY OR BY JUDGE, with neither Conviction upon a jury or bench trial nor sentence imposed by a Jury or by a Judge, under the THEORIES that (i) in the evening of 11/9/87 he was unlawfully possessing , and (ii) that he:

> "WERE WAIVING A GUN AROUND. THAT GUN WAS TURNED OVER TO THE POLICE. AND IT WAS THE GUN THAT FIRED THE BULLET THAT WAS FOUND IN THE BODY OF THE DECEASED,"

(iii) WITHOUT AFFORDING HIM A SINGLE OPPORTUNITY TO CONFRONT HIS ACCUSERS- THESE WHO "TURNED OVER TO THE POLICE" THE PRESUMPTIVE "GUN" [cf JC0015, JC0033].

b: The Defendants Named Herrein And Those Acting In concert With Them:

i. The Corporate  Defendant "The City Of New York" ("NYC") is located in the Southeastern New York, at the Mounth of The Hudson River, and is made up of  five  boroughs, viz; MANHATTAN,  BROOKLYN,  THE   BRONX, QUEENS,  AND  RICHMOND  (STATEN ISLAND), which was created  by the Defendant N.Y.S. Legislature by the passing in 1897 of  one  Act to Unit into Onae COMMUNITY, udner the CORPORATE name of the "CITY  OF  NEW  YORK," the various communities laying in and  about New York Harbor [see e.g. Laws of 1897, Ch  378], and since  1914, Defendant N.Y.S. Legilature has divided Defendant  State of New York's  voluntry government into 62 Counties,  and FIVE of  the Sixty-two  Counties [namely New York  , Kings ,  Queens, Richmond, and  Bronx] are MERGED with the  Defendant NYC [see e.g  N.Y. McKinney's County Law § 900], following  the Colonial Authorities's Decision  in 1683 to enact tht the Provicen of NYS or NY be divided into Twelve  Counties

[ALBANY,   CORNWALL,  DUKES,  KINS,  N.Y.,  ORANE,  QUEENS,  RICHMOND,

SUFFOLK, DUTCHESS, ULSTER AND WESTCHESTER], and, a priori, the Defendant NYC has  conspired under State or  Color of Government Law to deprie Plaintiff candelaria  of his civil, statutory and constitutional rights under State Laws and constitution and his rihts, privileges and immunities otherwise guranteed or  protected by the Constitution and Laws of the United, while conducting business under Color of  N.Y.S. Stae Law, both  in the individual and in its official/business  cpcity.

ii.  Defendant State of New York ("New York State" or NYS") is being Sued Individually and in its cpacity as being comprised of Counties, Cities, Towns and Villages, to deprive plaintiff candelaria of his civil, statutory and Constitutional rights, unde its laws and udner the Constitiona  and Laws of the U.S. United States [see e.g. N.Y.S. Const. Art. 9, § 1].

II —THE SPECIFIC WRONG COMPLAINING OF AND THE GRAVAMENS OF THE UNDERLYING CAUSES
OF ACTION IS THAT BY SUPPRESSING EVIDENCE OF THE NEWLY DISCOVERED SERIAL
# 288659LW COLT .38, TWO INCH BARREL CALIBER REVOLVER IMPUTED TO PLAINTIFF
AS A "GUN RECOVERED BY  CORRECTION OFFICER ARIAS VICTOR, SH. # 9419" [JC0015]
ON 11/9/87-THE CITY/STTE OF NEW YORK HAS FAILED TO TRIE. —CONVICT—PLAINTIFF
OF THE OFFENSES OR INFAMOUS CRIMES WITH WHICH HE HAD BEEN CHARGED. UPON
THE THEORY THAT  IN THE EVENING OF  11/9/87 PLAINTIFF CANDELARIA POSSESSED
AND AIMED AT CORRECTION OFFICER ARIS VICTOR, SH. # 9419 BUT CESAR ARIS
GRABBED FROM PLAINTIFF''S HAND AND TURNED OVER TO VICTOR ARIAS    A GUN
NYPD NON—TESTIFYING SGT. BENARDO BLAIR OBTAINED FROM VICTOR ARIAS OR A  GUN
<u>WHICH WAS TURNED OVER TO THE NYPD BY CORRECTION OFFICER ARIAS VICTOR, SH.#9419</u>


   14 . A Finding that Plaintiff Candelaria was being prosecuted  in April,

1989, under the primary theory that (a) in the evening of 11/9/87 Plaintiff

Possessed and aimed a   Victor Arias One Gun flow from the following

Statement made by the prosecutor during the april, 1989 State Petit Jury Trial":

(i) Question: : Never seen it before," ANSWER: "I ONLY SAW IT THE OTHER DAY

WHEN THEY TOOK IT OUT HERE IN COURT. No.";" Question: <u>ISN T IT A FACT  THAT<sup>I</sup>S</u>

<u>THE GUN YOU TRIED TO SHOOT VICTOR ARIAS WITH?</u>," ANSWER: "IT S NOT TRUE,"

[quoted from Pg. 389, Ls. 1--11 of the April, 1989 State Petit Jury Trial

Transcript (underlines and All-caps formats added)], whereas (b) newly

discovered Pre-Sentence Report # <u>QS88-00612</u>,  Court Control # 1020203924P,

additionally documented that:

      "ON 11/9/87, THE DEFENDANT, WHO WAS  ALLEDGEDLY IN POSSESSION OF A .38,
      CALIBER REVOLVER  LOADED WITH FOUR LIVE ROUNDS, <u>THREATENED TO SHOOT</u>
      <u>MR VICTOR ARIAS  WITH IT IN A TEXACO STATION AT 4 GRAND STREET, BROOKLYN,</u>"

[see e.g. Document # JC00  ].

   ,15. A Copy of a Subpoena issued on 3/13/89, signed by A.D.A. David Neier,

requested on 3/13/89, the following prominent documents, namely, (a) ARREST

REPORT # "<u>67769</u>" [compare or contrast Document # <u>JC0013</u>], and     (b) UF 61

COMLPLAINT NUMBER: "<u>12 280</u> [comare or contrast Document # JC0012], under

the    theory that the  "GUN USED IN MURDER," at  4 Grand street was the

presumptive gun recorded therein [see e.g.  Document # <u>JC0044</u>][cf. JC0012-JC0016].

13

a: The April, 1989 Trial Story Of Cesar Arias Does  Not Invest The Arresting Officers  John silva, SH. # 2671 And   Ann Marie Hardy, SH. # 35187 With Authority Of Probable Causes Or  Of Reasonable Suspicion The Arresting Officer silva and Hardy Otherwise Lacked   On 11/9/87

16. Neither Officer Silva Nor Officer silva's Co-officer Hardy had ever observed Plaintiff Candelaria in possession of a .38  Caliber revolver on 11/9/87 or ever between Plaintiff's birthday on 3/21/57 and 2009 and, although the arresting Officer would  claimed that  the Basis for probable cause was a PRESUMPTIVE GUN THRET  THAT PLAINTIFF HAD PRESUMPIVELY MADE AGAINST CESAR, a/k/a/,  CAESAR ARIS [see e.g. ¶¶ 13-14, Post], (a) Cesar arias  DENIED ANY GUN THREAT  UPON HIS PHYSICAL INTRIGRITY AND, THE ALLEGED MOTIONING OF PLAINTIFF TOWARD HIS WAISBAND,  CANNOT  BE THE  BASIC FOR PROBABLE CAUSE:

i. "Q: NOW, AFTER HE [YOUR BROTHER CORRECTION OFFICER ARIAS VICTOR, SH. #9419] LEFT, WHAT, IF ANYTHING, HAPPENED NEXT?
   A: ABOUT FIFTEEN MINUTES LATER, GIOVANNI COME BACK WITH TWO FRIENDS AND TELL ME, GIVE ME MY GUN BACK. I TOLD HIM, IT'S IS TOO LATER. I GIVE IT TO MY BROTHER [VICTOR ARIAS]. THEN HE SAID TO ME, YOU BETTER GIVE ME THE GUN BACK. THEN HE HAD HIS HANDS BY HIS WAIST.
   Q: WHERE?
   A: BY HIS  WAIST. THE I SAID TO HIM, HOLD IT, HOLD IT.  I MAKE BELIEVE
ii.   I HAD THE GUN. I  SAID, LET ME GIVE IT BACK TO YOU. I WENT INSIDE THE THE OFFICE AND I CALLED THE POLICE.

   Q: THERE ARE TWO OTHER PEOPLE WITH HIM?
   A: TWO OTHER PEOPLE WITH HIM. YES.
iii. Q: AFTER YOU CALLED THE POLICE, WHAT HAPPENED NEXT?
   A: THE POLICE COME DOWN. HE TAKE OFF WITH THE CAR AND THEN HE PARKED THE CAR ABOUT ONE BLOCK AWAY AND TRIED TO COME BACK AGAIN.  THE POLICE WENT OUT TO THE STATION. HE WAS    ACROSS THE STREET FROM THE STATION ABOUT ONE BLOCK. THEN I POINT[ED] TO THE POLICE. THERE IS HIM. THE POLICE LADY [ANN MARIE HARDY, SH. # 31587]] AND ONE MAN [OFFICER JOHN SILVA, SH. # 2671] RUN AFTER HIM.
iv. Q: THEY RAN AFTER HIM?
   A: THAT'S RIGHT.
v. Q: DID YOU SEE WHERE THEY WENT?
   A: SOUTH THIRD, STRAIGHT.

   Q: AFTER THAT?
   A: ABOUT FIVE MINUTES OR SO—THE PLICE BRING HIM BACK WITH THE HANDCUFFS IN THE BACK AND NO SHIRT. AND THEN I TOLD, THAT'S THE GUY. MR [A.D.A. DAVID] NEIER: NO FURTHER QUESTIONS,"

[re-printed from Document Bearing Bate-##

JC0073, LS. 9-25 through JC0074, Ls.  1-19, copy of which is attached herewith

(underlines, materials in backet marks and All-caps formats added)].

b: Probable Cause For The Warrantless arrest Of Plaintiff On 11/9/87  14
Cannot Be Predicated Under the Theory That Plaintiff Candelaria
"HAD HIS HANDS BY HIS WAIST"   While Demanding His Personal effect
[A Presumptive Gun]  Back Under the  Principles Of People v. De Bour-
40 N.Y.2d 210, at 215 & 223 And  Pwople v. Bracey-41 N.Y.2d 296, at 82
310 And-Because The Following Corresponding Stories of Officers Silva and
Hardy as to the Basic for Probable cause-Is  AMBIGUOUS-Plaintiff
May Rely On the UF-61 Complaint # 12, 280 [JC0012] To Resolve The
AMBIGUILTY  And So Bringing The arresting Officer Within the common Law
Fraud [Davis v. WAKELEE-156 U.S. 680, at 689-690 (1895]

17.  On 3/31/89, Officer Silva  s co-officer Hardy were asked and, under

Oath, testified that (a) upon receiving a radio transmission reporting an

unidentified man with a gun  at unknown  location, they "PROCEEDED TO SOUTH

FOURTH BETWEEN HAVEMEYER AND MARCY" at Brooklyn [id., at Pg.  29-30], and  that

(b) upon arriving to the location, the following event took place:

> "Q: WHEN YOU GOT TO THE LOCATION, WHAT  IF ANYTHING DID  YOU SEE THERE?
> A: WE HAD MET THE COMPLAINANT BY THE NAME OF CAESAR ARIAS, I BELIEVE
> HIS NAME WAS.
> Q: BY THE WY, DID  YOU KNOW HIS NAME AT THAT TIME?
> A: NO, I DIDN'T.
> Q: NOW, WHAT IF ANYTHING HAPPENED WHEN YOU FIRST SAW THE INDIVIDUAL
> YOU LEARNED TO BE NAMED CAESAR ARIAS?
> A: HE  STATED THAT THERE WAS A MAN WHO HAD COME TO THE GAS  STATION,
> POINTED A GUN AT HIM.
> HE STTED THAT THE PERSON WENT HALFWAY DOWN THE BLOCK, WAS STNDING
> ON THE  CORNEF . HE THEN POINED THE INDIVIDUAL OUT TO ME,"

[see Pg. 31, Ls. 3-17 of the Wade Hearing of 3/31/89's transcript containing

the Direct Testimony Of  Officer Hardy (underlines and All-caps formats

added)], whereas Officer  Hardy proceeded answering question on 3/31/89 (c):

> "Q: OKAY. NOW, AFTER MR. ARIAS POINTED TO THE DEFENDANT,  WHAT IF
> ANYTHING HAPPENED NEXT?
> A: I THEN BEGAN TOPURSUE THE DEFENDANT. HE  BEGAN TO FLEE.
> Q: AND DID ANYBODY ELSE GO——CHASE AFTER THE DEFENDANT?
> A: YES, POLICE OFFICER SILVA,"

[ID., AT Pg. 32, Lines 1—9 ] and Officer Hardy continued with her story (d):

> "Q: NOW, WHO  APPREHENDED HIM?
> A: OFFICER SILVA.
> Q: AND WHAT HAPPENED NEXT?
> A: AT THIS POINT HE WAS REAR HANDCUFFED AND PLACED IN AN  RMP AND
> WE PROCEEDED  BACK TO THE GAS STTION ON  SOUTH  FOURTH STREET.
> Q: NOW, WHO WAS WITH  YOU AND THE DEFENDANT IN THE POLICE CAR?
> A: OFFICER SILVA AND  [MY]SELF.
> Q: NOW, WHEN YOU  WENT BACK TO THE TATEXACO GAS STATION, AT FOURTH
> GRND STREET——
> THE COURT: IS IT  GETTY OR TEXACO?
> MR. [A.D.A. DAVID] NEIDER: IT'IS TAXACO.
> THE COURT: ALL RIHT.,"

[id., at Pg. 33-34].

18. Officer Hardy additionally testified that (a) as plaintiff was being chased by her and Officer Silva, he started removing his jacket and his shirt [ id., at 33—46], and that (b) Plaintiff was searched and gun was not found in his person or property:

"Q: AND YOU SEARCHED HIM AT THAT TIME?
A: YES, SIR.
Q: AND THERE WAS NO GUN ON HIM: IS THAT CORRECT?
A: YES, SIR.
Q: THERE WAS NO GUN IN THE JACKET OR THE SWATER WHEN THEY WERE RETRIEVED?
A: NO, SIR.
Q: NOW, DID THERE COME A TIME WHEN YOU PUT HIM BACK INTO YOUR RMP?
A: YES, SIR.
Q: BY THE WAY, DID YOU HAVE ANY CONVERSATION WITH  THE DEFENDANT AT THAT TIME ?
A: NO, SIR.,"

[id..,at Pg. 46, Ls. 2—24 (underlines and all-caps formats added )] , and

(c) Officer  Silva also denied finding any  gun in plaintiff's person or in the jacket or in any of plaintiff's personal property:

"Q: WHEN YOU ARRESTED HIM, DID  YOU PUT HIM DOWN AT ALL---WHEN YOU GRABBED HIM?
A: WHEN I GRABBED HIM, WE BOTH WENT DOWN TO THE GROUND AND I CUFFED HIM.
Q: DID YOU FIND ANYTHING ON HIM?
A: NO.
Q: NOW, THIS JACKET THAT    RETRIEVED BY ANOTHER OFFICER, WAS A GUN  FOUND IN THE JACKET?
A: NO.
Q: WAS THE GUN FOUND IN THE SHIRT?
A: NO.
Q: WHAT WAS FOUND IN THE  JACKET, DO  YOU KNOW?
A: SOME UNITED STATES CURRENCY AND SOME WHITE POWDER.
THE COURT: THAT WAS FOUND IN THE JACKET?
A: YES,"

[re-printed from Pgse- 1-22, at 20, Ls. 4-25 through Pg. 21, Lines 1-3 of the 3/31/89 Wade Hearing Transcript containing he Story Of Officer John Silva, Sh.   2671 (UNDERLINES AND All-caps formatse added)]. [2]

_____

[2] Cesar or Caesar arias never testified that he saw  a gun in Plaintiff's hands or  in the hand of  any of the  two presumptive "FRIENDS" of Plaintiff candelaria [cf.  People v. Ponder, 54 N.Y.2d 160, at 165, 429 N.E.2d 735 (citations omitted), with People v. Reid, 69 N.Y.2d 469, at 475-476 (N.Y. Ct. app. 1987)].

B: THE FIRST OCCURENCE—UNDERSPINNING RECOVERED BY CORRECTION OFFICER
ARIAS VICTOR, SH. # 9419 FROM HIS BROTHER CESAR ARIAS OF THE NEWLY
DISCOVERED SERIAL # 288659LW COLT .38 CALIBER REVOLVER [JC0015] IMPUTED
TO PLAINTIFF AS A "GUN RECOVERED BY CORRECTION OFFICER ARIAS VICTOR,
SH. # 9419—WHETHER "BLACK COLOR" OR  COLORLESS—CAN NOT FORM  THE BASIC
OF PROBABLE CUSE FOR PLAINTIFF'S SUBSEQUENTLY  WARRANTLESS ARREST OF
11/9/87 BY OFFICER SILVA/HARDY [SEE ¶¶ 10-16, ANTE][CF. SIBRON V.  N.Y.-
392 U.S. 40, at 63 (1968) AND U.S. V. MYER-308  F.3D 251, 263 (2ND CIR. 02)]

19. The Arresting Officers Hardy and Silva testified that: upon finding

neither gun nor weapon or firearm on plaintiff's person or in his property

[see e.g. ¶¶ 10-16, Ante], they took plaintiff to their Precinct, wherein

they received a gun from a non-testifying  Sgt., which had been recovered,

without  they knowing it, under the following circumstances (a): According

to  Cesar   And His brother Correction Officer Arias Victor's Own words, CESAR:

    i."Q: NOW DIRECTING YOUR ATTENTION TO NOVEMBER 9, 1987, AT  APPROXIMATELY
          7:20, 7:30 p.m., WERE YOU WORKING AT THAT TIME?
          A: YES, SIR.
          Q: AND CAN YOU TELL ME WHO WAS PRESENT IN THE GAS STATION AT THAT TIME?
   ii. A: MY BROTHER [VICTOR ARIAS, A NYC CORRECTION OFFICER], I AND THE
          ONE FRIEND.
          Q: NOW, WHAT HAPPENED AT THAT TIME?
 iii. A: WELL, AT THAT TIME, MY BROTHER [VICTOR ARIAS ] WAS IN THE  GAS
          STATION AND GIOVANNI    COME IN TO DROP HIS CAR TO BE REPAIRED .
          Q: WHO?
          A: GIOVANNI. HE COME DOWN TO DROP HIS CAR OFF  TO BE REPAIRS AND THEN
          HE HAVE LUGGAGE OR SOMETHING IN THE CAR. HE TAKE THEM OFF AND TOLD
          ME TO CALL THE TAXI.  HE GIVE ME A DOLLAR TO HAVE CHANGE.  I WENT
          ACROSS THE STREET TO CHANGE  THE DOLLAR AND I BE BACK. WHEN I BE
          BACK, I CALLED THE TAXI.
  iv. Q: SLOW DOWN. DO  YOU SEE  ANYBODY IN COURT THAT YOU RECOGNIZE?
          A: YES.
          Q: COULD YOU POINT HIM OUT PLEASE?
          A: THIS GUY THERE.
          MR. [A.D.A. DAVID] NEIER: YOUR HONOR.
          MR. [SALVATORE]  CANONICO: INDICATING THE DEFENDANT, YOUR HONOR.
          THE COURT: INDICATING THE DEFENDANT.
          Q: WHO IS THAT MAN?
          A: GIOVANNI.
          Q: YOU CALL HIM GIOVANNI?
          A: YES, SIR.
  v. Q: WHAT HAPPENED NEXT?
          A: THEN WHEN I CALLED THE TAXI—WHEN THE TAXI COME IN, HE HAVE SOME WORD
          WITH MY BROTHER [VICTOR ARIAS]. THEN HE PULLED A GUN AND POINT[ED]
          TO MY BROTHER, AND I TAKE THE GUN OUT   HIS HANDS.
  vi. Q: WHAT DID YOU DO WITH THE GUN?
          I GIVE IT TO MY BROTHER [CORRECTION OFFICER ARIAS VICTOR, SH. # 9419].
 vii. Q: WHAT HAPPENED?
          A: MY BROTHER TAKE DOWN THE GUN   TO THE PRECINCT.
[quoted from Document # JC0071,  Ls. 2-25, JC0072, Ls. -1-25, and JC00 73, Ls 1—5]

a. The Narrative On  4/7/89 Of Correction Officer Arias Victor, Sh. #9419 Identifying As A "A Colt .38, Like A To Inch Barrel, Black Color" [Tr.  283: 8-10]-If Credited/Accredited By The Jury On 4/7/89-Could  Be Neither Discredit Nor  Accredited By Lay Or Expert Witnesses Without First Hand Knowledge Of The Event Encompassing The Gun Possession Story On 11/9/87

20. If It is reasonably to argue that the way in which an object, such as a gun, weapon, or firearm, is perceived must be determined by the total context or field in which it exists and, consequently,  the whole gun, loaded weapon or fiearm, is different from the sume of its  parts, and neither eyewitness account  can be contradicted by  non-eyewitness nor by expert witness  who had never  actually witnessed the event and,

"an act done by an agent cannot be varied, qualified, or explained either by his declarations, which amount to no more than a mere narrative of a past occurrence, or by an  isolated conversation held, or an isolated act done, at a later period,"

[see e.g. R. Co. O'Brien, 119 U.S. 99, at 105, 7 S.Ct. 172, at 175, supra (emphasis added)], where in the case sub judice  (i) Victor  and (ii) Cesar Arias were the only  eyewitness on 4/7/89 placing Plaintiff in Possessing of a weapon  in the evening  of 11/9/87 in a Texaco Gas Station in which Plaintiff presumptively came in to drop off his car for repair  and (iii)  contrasted  known evidence, from "Newly Discovered Evidence:

"The main  falsehood that  now requires reversal-uncovered for the first time during desposition on remanded-is Waiter's false testimony [...],"

[taken from Drake v. Portuondo,   553  F.3d 230,  at 241 (2d Cir. 2009)(emphasis and materials in bracket marks  added)], and  the NYS Court of Appeals has also contrasted  New, from Old information, or newly discovered, from known eformation:

"The case upon this appeal is very much complicated by the  fact that newly discovered evidence  is the ground upon which the  accused's claims are predicated"

[see generally People v. SHilitano's, 218 N.Y. at  161,  at 168-171 (N.Y. Ct. App. 1961) (just  summary of  what the court had said)], and finally,  the Second Circuit had  also contrast  a known  specifically described caliber revolver,  from a newly discovered different and distinct caliber revolver:

"[[The Witness] told the police detectives that the man he had seen shooting was holding a  [...] a black . 44 caliber revolver with brown  handles, whereas the  actual murder weapon was a  black nine millimeter  semi-automatic,"

[taken  from Leka v. Portuondo, 257 F. 3d 89,  at  107, see also id., at 99-104 &  104-107 (2d  Cir.  2001)(finding  a suppression of the underlying information,  a  Due Process Violation].

21.  "     MR NEIER: What happened, the defendant had a dispute with  the
owner of a garage, during that dispute there was a struggle over the
gun and the owner took it  away. He called his brother, or his brother
was present  and his brother is  a corrections officer. He took that
gun to the precinct. While the brother was in the precinct, the defendant
returned with two other individuals and demanded his  gun back.  At that
point the garage owner says, "My brother has the gun. Let me go
call him.' He called the police. The police then got the man with the
gun call and  responded to the gas station."

[see  e.g.  Tr. 93:  3-25 (emphasis added)] indeed,

(a):     During the March 31, 1989 State  Proceeding, Wade Hearing,  Officer

Hardy additionally testified that She escorted Plaintiff, along with her

co-officer silva, to their Precinct's Station house where  They Receied a GUN:(a):

>     i>"Q: WHO WAS    ESCORTING MR. CANDELARIA?
         A: OFFICER SILVA AND MYSELF.
         Q: YOU EACH HAD HIM BY AN ARM?
         A: YES.
    ii> Q: NOW, DID YOU NOTICE VICTOR ARIAS IN THE PRECINCT WHEN YOU ARRIVED
         WITH THE DEFENDANT?
         A: NO, I DID NOT.
   iii> Q: WHO TOOK CARE OF THE GUN THAT WAS AT THE PRECINCT?
         A: SERGEANT BLAIR  WAS IN POSSESSION OF THE GUN AT  THIS POINT, AT WHICH
         POINT HE HANDED IT TO OFFICER SILVA TO  VOUCHER."

[re-printed from Document # JC0055, Ls. 1-7 (underlines and All-caps

formats added)] and, in regarding thereof, Officer John Silva, SH. # 2671

additionally conceded that he was the Officer who  indeed, received and

VOUCHERED THE GUN IN QUESTION, in his own words and phrases (b):

      i< Q: NOW, LET ME SEE IF I UNDERSTND, YOU'RE THE ONE      THAT
          VOUCHEREDE THE GUN?
     ii< A: YES
         Q: BUT IT WASN'T     TURNED OVER TO YOU——
    iii< A: THE SERGEANT GAVE IT TO ME.
         Q: THAT WAS THE PERSON THAT TURNED IT OVER TO YOU——
         A: YES."

[REPRINTED FROM Pg. 25, Lines 5-25 of the     March 31, 1989 Wade Hearing Tr.

(underlines and All-caps formats added)]

_____

     Under Mutual Life Ins. Co. v. Hillmon-145 U.S. 285, at 295-296 (1892),
accords, people  v. James, 93 N.Y.2d 620   the Newly Discoverd Serial # 288659,
LW Colt .38  Two Inch Barrel Caliber Revolver [see e.g. Document # JC0015]
is admissible to set the "FACTS THUS DEVELOPED IN THEIR TRUE LIGHT" [id., 295-296].

22. In People v. Ford, 840 N.Y.S.2d 668 (3rd Dep't. 2007), the

Court said that:

> "SINCE THE PROSECUTION HAD TO BE ABLE TO PROVE THEIR CASE, THE
> PHOTOGRAPHS WERE ADMISSIBLE AND THE COURT PROPERLY   INSTRUCTED THE
> JURY TO AVOID MAKING EMOTIONAL JUDMENT   BASED ON THE PHOTOGRAPHS
> [BECAUSE] THEY WERE USED TO SUPPORT A DISPUTED OR MATERIAL ISSUE,"

[id., at 840 N.Y.S.2d 668][see also Matter of Gomez v. Fischer, 74 A.D.3d –

1399 (3rd Dep't. 2010)] and, during a Wade Hearing Conducted on 3/31/89,

NYCPD Officer John Silva, SH. # 2671, denied any personal lnowledge

about the presumptive .38 Caliber Revolver Correction Officer Arias

Victor, SH. # 9419 and his brother Cesar Arias were being accused

Plaintiff Candelaria of possessing in the evening of 11/9/87, in his own words:

> "Q: NOW, OFFICER SILVA, YOU DO NOT KNOW HOW THAT GUN GOT  TO THE PRECINCT,
> DO YOU?
> A: VICTOR  BROUGHT IT TO THE PRECINCT.
> Q: BUT YOU DID NOT KNOW IT AT THE TIME?
> A: NO, I DID NOT.
> Q: IT WAS ONLY LATER SOMEBODY TOLD YOU?
> A: WHEN I GOT TO THE PRECINCT I WAS TOLD BY THE SERGEANT AND VICTOR
> THE STORY.
> Q: HOW MANY POLICE OFFICERRS HANDLE THAT GUN BEFORE YOU GOT IT?
> A: I HAVE NO IDEA HOW MANY POLICE OFFICERS HANDLE IT BEFORE I GOT IT,"

[quoted from Document Bearing Bate-Stamp  Numer JC0053, Lines 23-25 through

JC0054, Ls. 1-10 (underlines and All-Caps Formats added)].

23. During his April, 1989 State Grand Jury Trial  Story, NYPD Officer

John Silva, SH. # 2671, took the Stand and, pursuant to the INstruction

of the NYPD and  the Office of the Kings Co. D.A. and with  the knowledge

of NYC and the UCS were asked and, udner Oath, answered the following

direct questions possed by the A.D.A. on  whose behalf he was being Testifying:

> "Q: WHAT DOES  VOUCHERING MEAN?
> A: THAT'S  TAKING PROPERTY AND KEEPING IT FOR SAFEKEEPING.
> Q: CAN YOU TELL ME UNDER WHAT NUMBER THIS WAS VOUCHERED?
> A: CAN I REFRESH MY MEMORY?
> A: YOU MAY REFRESH  YOUR RECOLLECTION.
> A: IT WAS  VOUCHERED UNDER   VOUCHER D-12747,"

[quoted from Pg. 313, Ls. 1-8 of the april, 1989 State Jury Trial Transcript,

accords Document Bearing Bate-Stamp # JC0079 (underlines.-caps formats added)].

24. The April 7, 1989 Story Of Cesar Arias Proceeds from the preceded

Page:

> "Q: WHAT HAPPENED NEXT?
> A: THEN WHEN I CALLED  THE TAXI--WHEN THE TAXI  COME IN, HE
> [IN REFERENCE TO PLAINTIFF CANDELARIA] HAVE  SOME WORD WITH MY
> BROTHER [IN REFERENCE TO CORRECTION OFFICER ARIAS VICTOR, SH. # 9419].
> THEN HE [a] PULLED A  GUN AND [b] POINATE  TO MY BROTHER, AND [c]
> I TAKE  THE  GUN OUT OF  HIS HANDS.
> Q: WHAT DID YOU  DO WITH THE GUN?
> A: I GIVE  IT TO MY BROTHER [CORRECTION OFFICER ARIAS VICTOR# 9419].
> Q: WHAT HAPPENED?
> A: MY BROTHER TAKE DOWN THE GUN TO THE  PRECINCT,"

[quoted from Pg. 331, Ls. 17-25 through Pg. 332, Ls. 1-4,

Document Bearing Bate-Stamp # JC0071-JC0072 (underlines, materials

in bracket marks and all-caps  Formats added)][compare¶ 17, Ante].

25. Correction Officer Arias Victor, SH. #9419,

> "Q: NOW,  AFTER YOUR BROTHER [CESAR ARIAS] GAVE  YOU THE  GUN, WHAT DID
> YOU DO?
> A: I WENT  TO THE NINE O  PRECINCT LOCATED  AT UNION  STREET AND
> GIVE THE GUN  TO THE POLICE.
> Q: DO  YOU RECALL WHICH POLICE  OFFICER YOU  GAVE  THE GUN  TO?
> A: GAVE THE  GUN TO  SERGEANT  BLAIR.
> Q: BLAIR.
> A: YES, SIR,"

[quoted from  Pg. 281, Ls. 3-25 of the underlying April 7, 1989 Jury Trial

testimony's Transcript, copy of  which  is affixed herewith as Document

bearing Bate- Stamp numbers JC0067, Ls. 18-25, through JC0068, Ls. 1 (underlines,

materials in abracket marks and All-Caps  Formats added)].

26. Cesar Arias, Continues with the Second Part of His 11/9/87 Event's

Story, as  Documented during his APril 7, 1989 Jury Trial Transcript:

> "Q: WHAT HAPPENED?
> A: MY BROTHER TAKE DOWN THE GUN TO THE PRECINCT.
> Q: YOUR BROTHER  LEFT, RIGHT?
> A: YES, HE LEFT.
> Q: YOU DON'T KNOW WHAT HE  DID?
> A: NO, I DON'T KNOW WHAT HE DID.
> Q: NOW, AFTER HE LEFT, WHAT, IF ANYTHING, HAPPENED NEXT?
> A: ABOUT FIFTEEN MINUTES LATER, GIOVANNI COME BACK WITH TWO
> FRIENDS AND TELL ME, GIVE ME MY GUN BACK,"

[see id., at pg. 332, Ls. 2--15, also affixed as Document Bearing JC0072A].

[Victor||s Story Of 4/7/89 Proceeds from the Preceded Pages]          21

27. "Q: ALL RIGHT. WHAT HAPENED NEXT?
    A: AFTER I GAVE THE GUN TO SERGEANT  BLAIR, SERGEANT  BLAIR GIVE THE
       GUN TO OFFICER SILVA.
    Q: WHEN YOU FIRST GAVE THE GUN TO SERGEANT  BLAIR, WS OFFICER SILVA
       PRESENT?
    A: YES, SIR.
    Q: NO. I'M NOT MAKING MYSELF CLEAR.

       HOW LONG WERE YOU I N THE POLICE PRECINCT?
    A: FOR HOW LONG  I WAS THERE?
    Q: YES. MR. NEIER: [A.D.A.]: I WILL WITHDRAW HE QUESTION.
    Q: HOW MUCH TIME PASS BETWEEN THE TIME THAT YOU GVE THE GUN TO SERGEANT
       BLAIR AN THEN SERGEANT BLAIR GAVE THE GUN TO OFFICER SILVA?
    A: ABOUT $40 MINUTES OR AN HOUR.
    Q: WHEN OFFICER SILVA  CAME TO THE PRECINCT, WAS ANYONE WITH HIM?
    A: YES.
    Q: WHO WAS WITH HIM?
    A: THIS SENTLEMAN [indicating Plaintiff candelaria]
       MR. NEIER: INDICATING THE DEFENDANT, YOUR HONOR.
       THE COURT: YES.

[id., at Pg.282, Ls. 1—25 through Pg. 83, Ls. 1—4, accords document

bearing Bate-stamp ## JC0068 through Jc0069, Ls. 1—5]:

    "Q: NOW, WHAT KIND OF GUN WAS IT?
    A: THAT WAS A COLT .38, LIKE A TWO INCH BARREL, BLACK COLOR.,"

[id., at Pg. 283, ls. 6—8, accords Document # JC0069, Ls. 6-8 (underlines

and All-caps formats added)]:

    "  THE COURT: WHO DID HE COME TO THE PLICE STATION WITH, THE DEFENDANT
       HE CAME WITH YOUR BROTHER OR——
       THE WITNESS: WITH THE POLICE OFFICER.,"

[id., at Pg. 283, Ls. 9—12, accords document # Jc0069,  and finally,

Victor Arias testified that the "BlACK Color" gun in question "LOOK LIKE

THE  SAME ONE" that the prosecution had introduced in  Evidence added)], and

(a) neither fingerprints nor palmprints or DNA were there inatroduced in the

April, 1989 State Jury Trial linking Plaintiff Candelaria to  any .38 Caliber

revolver[cf. U.S. v. Hall, 845 F.2d 1281, at 1284-1285 (5th Cir. 1988):

    "THE PRESENCE OF HALL'S FINGERPRINT ON THE  CHECK SHOWS THAT HE
     POSSESSED   THE  CHECK AT SOME POINT AFTER IT HAD BEEN STOLEN FROM
     THE MAIL AND ATAKEN OUT  OF ITS ENVELOPE,"

[id.,  845 F.2d at 1284-1285 (citations omitted) (underlines and All-caps

formats added)][cf: U.S. v. Johnson, 137 F.3d 970, at 974-975 ].

28. On 5/1/89, the Office of the Kings C.O. D.A. informed a "State 22

Judge that Plaintiff Candelaria [uneknowest to him prior to that time]:

> "WAS INDICTED FOR THAT INCIDENT UDNER INDICTMENT NUMBER 9954/87, AND
> RETURNED ON THE WARRANT ISSUED ON THE QUEENS INDICTMENT FOR THE
> STOLEN CAR DISCUSSED ABOVE. HE THEN WARRANTED ON BOTH CAESES AND
> FLED TO FLORIDA,"

[re-printed from said letter of 5/1/1989 (All-caps formats added)], and (a)

the "CERTIFICATION PURSUANT TO   N.Y. CPLR § 4518(c) of the NYC DOCS's

YELENA KORDOVA, copy of which is affixed herewith as Document # JC0021,

certified that the "ATTACHED  1 PAGE  DOCUMENT " entitled "OLD HISTORY INMATE

INQUIRY' WAS MADE IN THE REGULAR COURSE OF NEW YORK CITY DEPARTMENT OF

CORRECTION BUSINESS," [id], and (b) the "OLD HISTORY INMATE INQUIRY"

[which is or appeard to be a Hard copy of a computer print-out] documented

that Plaintiff candelaria was admitted to the NYC DOC on 11/11/87, and (c) that

> "maxim, falsus in uno, ralsus in omnibus, must still be given some
> force as a legal principle. Whatever qualifications may have been
> attached to it in modern time, we think this is a case for its
> practical application,"

[see e.g. People v. Ledown, 153 N.Y. 10, at 22 (N.Y. Ct. app. 1897) (emphasis

added)]. The heretofore described/quoted "maxim," has been identified by

Federal Circuit Court a an instruction to the jury that the jurors,

> "could infer that witness who was willfully false in  material part
> of testimony could be distrusted in other parts created permissible or
> permissive presumption under the law,"

[see e.g. Turner v. Calderon, 281 F.3d 851, at 865-866, and had been

equally deemed by state Court, in particular, by the N.Y.S. Court of Appeal,

under People v. Perry, 277 N.Y. 460, at 467-468, 14 N.E. 793 (N.Y. Ct. App.

1938), and in the case sub judice, the newly discovered "GUN RECOVERED BY

CORRECTIONS OFFICER ARIAS VICTOR, SH. # 9419" [see Document # JC0015], not

only brings the April, 1989, testimony of Officer Silva, and those other

who corrobrated him, within the "Falsus in uno, falsus in omnibus Maxim,

heretofore described, but also his 4/7/89 allegations that he had vouchered

under "Voucher D12747, the laoded firearm on evidence [see Tr. 313], also

> "brings [him] within the principle of the common law that when a party
> asserts what he knows is false, or does not know to be true, to
> another's loss, and to his own gain, he is guilty of a fraud,-a fraud
> in fact, if he knows it to be false; a fraud in law, if he does not
> it to be true,"

[ accords, Davis v. Walkerlee, supra, 156 U.S. at 690 15 S.Ct. 555, at 558].

29. "LAW ENFORCEMENT AGENCIES CONSTITUTE BUSINESS AND RECORDS SYSTEMATICALLY MADE FOR CONDUC T OF BUSINESS ARE INHERENTLY HIGHLY ATRUSTWORTHY,"

[accords, People v. Guidice, 83 N.Y.2d 630, at 635, 634 N.E.2d 981 (N.Y. Ct. A App. 1993) (All-Caps Formats added)] and that (b) business Record is:

"ANY WRITING OR ARTICLE ... MAINTAINED BY AN ENATERPRISE FOR PURPOSE OF EVIDENCE OR REFLECTING ITS CONDITION OR ACTIVITY,"

[accords, People v. Bloomfield, 6 N.Y.3d 165 (N.Y. Ct. app. 2006) (quoting N.Y. Penal Law § 175.00(2) (All-caps Formats added))][see e.g. Espinal v. Bennett, 588 F. Supp. 2d 388 (E.D.N.Y. 2008) and Delaware Canal, Supra, 250 U.S. at 128-129 (citations omitted)]. Blockburger v. U.S., 284 U.S. 299, at 304, 52 S.Ct. 180, at 182 (1932), which specifically hold that:

"[IF] THE SAME ACT OR TRANSACTION CONSTITUTES A VIOLATION OF TWO DISTINCT STATUTORY PROVISIONS, THE BEST TO BE APPLIED TO DETERMINE WHETHER THERE ARE TWO OFFENSES OR ONLY ONE, IS WHETHER EACH PROVISION REQUIRES PROOF OF A FACT WHICH THE OTHER DOES NOT,"

[quoted form U.S. v. Betancourt, 116 F.3d 74, at 75 (1997, 3rd Cir.) (underlines and All-caps formats added)] and, applying the above rationales to the case sub judice, during his april, 1989 State Grand Jury Trial, Correction Officer Arias Victor, SH. # 9419, were asked and, under Oath during direct examination by the prosecution, answered: (c):

"Q: NOW WHAT KINDS OF GUN WAS IT?
A: THAT WAS A COLT .38, LIKE A TWO INCH BARREL, BLACK COLOR,"

[see DOcument # JC0069, also Pg. 283, Ls. 1-8 of the 4/7/89 Trial Transscript (underlines and All-caps formats added)], whereas on 10/23/07, the State of N.Y. [see e.g. Documents ## JC0001--JC0011], for the first time (d) disclosed newly discovered material showing that (i) SERIAL # 288659LW is the MARKING of the actual .38 Caliber "GUN RECOVERED BY CORRECTION OFFICER A ARIAS VICTOR, SH. # 9419", (ii) NYPD Officer John Silva, SH. # 2671 had actually Vouchered on 11/9/87 (iii) under NYPD Property Clerk"s Invoice # D12747 [see e.g. Document ## JC0012-JC0026, at JC0015].

C: PLAINTIFF CANDELARIA MAY RELY ON THE NEWLY DISCOVERED SERIAL # 288659LW     24
COLT .38 CALIBER "GUN RECOVERED BY CORRECTION OFFICER ARIS VICTOR, SH. #
9419" [JC0015] AND ON THE SUBSENT STORIES OF THE PROSECUTION'S CHIEF
EYEWITNESSES VICTOR AND CESAR ARIAS'S/TESTIMONY OF OFFICER SILVA
TO ESTABLISH HIS MISTAKEN OF IDENTITY DEFENSE AS TO ANY DIFFERENT OR
DISTINCT GUN INTRODUCED BY THE PROSECUTION DURING THE APRIL, 1989 JURY TRIAL
[SEE E.G. N.Y. PENAL LAW § 15.20 And Id. § 15.05]

30.  New York Penal Law § 15.20(1)(2)(c)(d)  provides that A Factual
Mistake Can be predicated on, more  specifically:

"FOUNDED UPON AN OFFICIAL STTEMENT OF THE LAW CONDITIONED IN  (a) A
STATUTE OR OTHER ENACTMENT, OR (b) AN ADMINISTRATIE ORDER OR PERMISSION,
OR (c) A JUDICIAL DECISION OF A STATE OR  FEDERAL COURT, OR (d) AN
INTEPRETATION OF THE STATUTE OR LAW RELATING TO THE OFFENSE,
OFFICIALLY MADE OR ISSUED BY A PUBLIC SERVANT ...,"

[id., PL § 15.20(1)(2)(c)(d) (All-caps formats and underlines  added)], and

(i)  the  June 24, 1999 Federal Judicial Decision, memorandum  and Order

issued by a  Article III Court in relevant parts found  that  Plaintiff

Candelaria "HAS NEVER BEEN charged with possession of Two Weapon and that

(ii)  there were  neither Expert nor lay  witness or  other evidence

establishing or tending to establish the existence of a Second Weapon [see

e.g. ¶ 15, sub-¶ "(a)," ante].

31.  During the APril, 1989 State Grand Jury  Trial in the UCS, however,

the prosecution  claimed  that in the evening of 11/9/87 Plaintiff Candelaria

had Violated New York State Penal Law § 265.03 prohibitting possession of

a loaded  fiearm with intent to use the same unlawfully against another

under the  theories  that (a) in the evening of 11/9/87 Plaintiff candelaria

unlawfully possessed one  specific "COLT .38, like  a two inch barrel,

black color caliber revolver  or  "GUN" and  that (b) Plaintiff Candelaria:

"[i] HAD AN ARGUMENT WITH THE OWNER OF  THAT GAS  STATION. [ii] THEY
STRUGGLED AND  THAT THE OWNER OF THAT GAS STATION, CESAR ARIAS, [iii]
WAS ABLE TO GET THE  GUN THAT THE DEFENDANT WAS HOLDING WAY FROM HIM. [iv]
HE GAVE THE GUN TO HIS BROTHER VICTOR ARIAS, [v] WHO WAS A CORRECTION
OFFICER, [vi] WHO TURNED IT IN TO THE POLICE,"

[Re-printed from Document # JC0059, Ls. 12-25 (underlines, materials in

bracket marks and All-caps formats added)] , and (c) during the SANDOVAL

Hearing the  Prosecution Office of the Kings Co. D.A. Made similar assertion.

32.  N.Y. CPL § 70.20 provides that:

"NO CONVICTION OF AN OFFENSE BY VERDICT IS VALID UNLESS BASED UPON TRIAL
EVIDENCE WHICH IS LEGLLY SUFFICIENT AND WHICH ESTABLISHES BEYOND
A REASONABLE DOUBT EVERY ELEMENT OF SUCH OFFENSE AND      DEFENDANT.
COMMISSION THEREOF."

[id., CPL § 70.20 (underlines and all-cps formts added)] and, in regrding

thereof (a) CPL § 70.10(1)  defines "LEGALLY SUFFICIENT EVIDENCE" as"

"MEANS COMPETENT EVIDENE WHICH, IF ACCEPTED AS TRUE, WOULD ESTABLISH
EVERY ELEMENT OF AN OFFENSE CHARGE AND THE DEFENDANT'S COMMISSION THEREOF."

[id., CPL § 70.10(1)(underlines and all-cps formas added)] [2] and, during

the April, 1989 State Petit Jury Trial  Correction Officer aris Victor, Sh. #

9419" testified tht on 11/9/87 he recovered from his brother Cesar arias

and turned over to the NYPD Benardo  Blair one Speific "COLT .38, LIKE A TWO

INCH BARREL, BLACK COLOR" caliber revolver which Plaintiff candelaria was

or had aimed or attempt to Display at victor arias during an argument over

exchange with or over a "Dollar" [see e.g. ¶ 19 and sub-¶¶ underspinning it,

Ante], and Plaintiff candelaria's defense was that either Victor arias

and his brother Cesar Arias fabricated the accusation against him because

Plaintiff thretened to report  their MONEY COUNTERFEIT OPERATION or that they

were mistaken(i):

> "Q: MR. CANDELRIA, DID EITHER [a] VICTOR ARIAS OR [b] CESAN ARIAS EVER
  TAKE A GUN FROM YOU?
  A: NEVER IN MY LIFE. I DID KNOW THEM, BUT NEVER,  EVER HAD THEY TAKEN OFF
  A WEAPON.
>>   BUT YES, I HAVE DONE BUSINESS WITH THEM, YES, BUT THAT IS NOT TRUE
  NOT TRUE WHAT THEY  SAID."

[re-printed from Pg. 378, Lines  20-25 through Pg. 379, Ls. 1-3 of the

April, 1989 State Petit Jury Trial Transcript (materials in bracket marks,

33.   The Court summarily denied Plaintiff's motion  for an order of dismissal,
[see Tr. 393]:

"Based upon the testimony in the record, the Court is of the opinion
there are  factual issues which have to be  passed upon by the
jury. The motion, therefore, is denied. The defense counsel has an
exception."

[Tr. 393, lines  1-25 (EMPHASIS ADDED)],

D: WHETHER THE CRIME OF HAVING IN POSSESSION  IN THE EVENING OF 11/9/87-
WITH INTENT  TO USE THE SAME AGAINST VICTOR OR CESAR ARIAS IN VIOLATION
OF N.Y.S. PENAL LAW § 265.03 (1987)-A NEWLY DISCOVERED SERIAL # 288659LW
[JC0015] COLT .38 TWO INCH BARREL CALIBER "GUN RECOVERED BY CORRECTION
OFFICER ARIAS VICTOR, SH. # 9419-ONE FOR WHICH N.Y.S. LAW AUTHORIZES
ANY STATE COURT/JUDGE TO AWARD AN INFAMOUS PUNISHMENT UPON CONVICTION-
AND-IF SO-HAS  PLAINTIFF CANDELRIA BEEN CONVICTED  AND UPON CONVICTION
ANY INFAMOUS PUNISHMENT AWARDED OR IMPOSED UPON HIM THEREOF?

34. Newly Discovered Evidence for the first time obtainead by Plaintiff

Candelaria in October 23, 2007, Documented that in the evening of 11/9/87,

Plaintiff Candelaria was charged with one Specific  Serial # 288659LW Colt

.38 Two Inch Barrel Caliber revolver Which was documented by the charging

Officer as (a)  a "GUN RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH. # 9419"

[see e.g. Document # JC0012-JC0016 at JC0015] and (b) four Serial # 288659LW

Colt .38 caliber Rounds or  bullet [see e.g. Documents ## JC0012-JC0016],

and additional Newly Discovered  evidence obtained by Plaintiff  in February,

2009, documented that (c):

>      "[i] ON  11/9/87, THE DEFENDANT  WAS ALLEGEDLY IN POSSESSION OF A  .38
>      CALIBER REVOLVER LOADED WITH FOUR LIFE  ROUNDS"

[see e.g. Document # JC0085 (All-caps formats added)], and (d) during the

April, 1989 State Grand Jury Trial the  State  Grand Jury Was Instructed that:

>      "[i] THEREFORE, WITH RESPECT TO COUNT  TWO OF  THE INDICTMENT, IF  YOU
>      FIND THE PEOPLE HAVE PROVED TO YOUR SATISFACTION BEYOND A REASONABLE
>      DOUBT EACH OF THESE FOUR ELEMENTS AS I HAVE JUST EXPLAINED THEM:
>      FIRST, THAT ON OR  ABOUT NOVEMBER 9, 1987, IN THE COUNTY OF KINGS,
>      THE DEFENDANT POSSESSED A CERTAIN OBJECT, WHICH WAS INTRODUCED INTO
>      EVIDENCE BY THE PEOPLE AS PEOPLE'S EXHIBIT: TWO, THAT WHAT THE DEFENDANT
>      POSSESSED WAS,  IN FACT, A LOADED FIREARM; THREE, THAT THE DEFENDANT
>      KNOWINGLY POSSESSED A LOADED FIRERM  AND, FOUR, THAT THE DEFENDANT
>      POSSESSED A LOADED FIREARM WITH INTENT TO USE IT  UNLAWFULLY
>      AGAINST ANOTHER, YOU [ii] MAY FIND THE DEFENDANT GUILTY OF THE CRIME  OF
>      CRIMINAL POSSESSION OF A WEAPON IN THE SECOND DEGREE,"

[recited from Pg. 492, Ls. 6-22 of the April,  11, 1989 State Trial

Transcript (materials in bracket marks and All-caps formats and underlines

added)].    2

---

     2 Cf. Ex parte WILSON, 114 U.S. 417, at  422 & 426 ( 3/30/1885) and
Re Claasen, 140 U.S. 200, at 205  and Paquete  Habana, 175 U.S. 677, 682.

35.  The Supersiding Indictment # 8897/88 [see e.g. Document # JC0040-41]
actually charged Plaintiff candelaria with Five Count of  Commission of
Criminal activities and (a) "WITH RESPAECT TO COUNT THREE of the Indictment"
the State court instructed the Grand Jury in April, 1989 tht it was
incumbent upon the  Prosecution City/       New York or "The People" to
(b)  To establish beyond a reasonable  Doubt that (i):

"FIRST, THAT ON OR  ABOUT NOVEMBER 9, 1987, IN THE COUNTY OF KINGS,
THE DEFENDANT POSSESSED A CERTAIN OBJECT  WHICH WAS INTRODUCED INTO
EVIDENCE AS  THE PEOPLE"S EXHIBIT; TWO, THAT WHAT THE DEFENDANT
POSSESSED WAS, IN FACT, A FIREARM; THREE, THAT THE FIREARM  WAS LOADED
AT THE TIME THE DEFENDANT POSSESSED IT; FOUR, THAT THE DEFENDANT
KNOWINGLY POSSESSED THE FIREARM; AND, FIVE, THAT THE DEFENDANT'S
POSSESSION OF  A LOADED  FIREARM DID   NOT TAKE PLACE IN HIS HOME OR
PLACE  OF BUSINESS, THEN [ii] YOU MAY FIND THE DEFENDANT GUILTY
OF THE CRIME OF CRIMINAL POSSESSION OF A WEAPON IN THE THIRD
DEGREE,"

[recited from Pg. 496, Ls.  5-22 of he April, 1989 State Petit Jury Trial
Transcript (underlines, materials in bracket marks and all-caps formats
added)].

36.  New York CPL 1.20(16)(c) provides that (a):

"A CRIMINAL ACTION TERMINATES WITH THE IMPOSITION OF A SENTENCE OR
SOME OTHER FINAL DISPOSITION  IN A CRIMINAL COUART OF THE LAST
ACCUSATORY INSTRUMENT FILED IN THE CASE,"

[id., CPL 1.20[16][c] ( All-caps formats added)] and (b)  CPL 1.20(9) provides
that the  words and phrases "ARRAIGNMENT" means the occasion upon which:

"A DEFENDANT AGAINST  WHOM AN ACCUSATORY INSTRUMENT HAS BEEN FILED
APPEARS ABEFORE THE COURT IN WHICH THE CRIMINAL ACTION IS PENDING
FOR PURPOSE OF HAVING SUCH COURT ACQUIRE AND EXERCISE CONTROL
OVER HIS PERSON WITH RSPECT  TO SUCH ACCUSATORY INSTRUMENT AND
SETTING THE COURSE OF  FURTHER PROCEEDINGS IN THE ACTION,"

[id., CPL 1.20(9)(all-caps formats added)], and (c) Arraignment "is an
ELEMENTAL PREREQUISITE TO TRIAL READINESS." [2].

---

[2] See e.g.  An accused  must be tried, convicted or acquitted for
the offenses for which he had been charged, arraigned and indicted under
new  york law [see e.g. People  v. Perez, 83 N.Y.2d 269, at 274  and
People v. England, 84 N.Y.2d 1, 4 (N.Y. Ct. app. 1994)].

III—THE SPECIFIC WRONG COMPLAINING OF AND THE GRAVAMENS OF THE UNDERLYING
CAUSES OF ACTION IS THAT THE NEWLY DISCOVERED SERIAL # 288659LW [JC0015[
COLT .38 CALIBER REVOLVER IMPUTED TO PLAINTIFF CANDELARIA AS A "GUN
RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH. # 9419" [JC0015] NEGATES
PROBABLE—CAUSE AS OF JUNE 24, 1988 AND—IN THE ABSENCE OF FORENSIC EVIDENCE
THAT IT WAS OPERABLE AND CAPABLE OF DISCHRGING ANY OF THE SEVEN ROUNDS
INTRODUCED DURING THE APRIL, 1989 PETIT JURY TRIAL AS PEOPLE'S EXHIBIT 2B
ON EVIDENCE—BRINGS THE PROSECUOR WITHIN THE MEANING OF COMMON LAW FRAUD
[DAVIS V. WAKELEE—156 U.S. 680, AT 689—690 (1895)] AND TRANSANCTINALLY
IMMUNIZES PLAINTIFF CANDELARIA FROM BOTH CRIMINAL AND CIVIL LIABILITY AT N.Y.S.

    37. Primarily, the principle of common law fraud provides    :

"THAT WHEN A PARTY ASSERTS WHAT HE KNOWS IS FALSE, OR DOES NOT KNOW TO BE
TRUE, TO ANOTHER S LOSS, AND TO HIS OWN GAIN, HE IS GUILTY OF A FRAUD,
A FRAUD IN FACT, IF HE KNOWS IT TO BE FALSE: A FRAUD IN LAW, IF HE DOES
NOT KNOW IT TO BE TRUE,"

[²], and    N.Y.S. CPL § 570.58, defines that:

"A PERSON BROUGHT INTO THIS STATE ON OR AFTER WAIVER OF EXTRADITION BASED
ON A CRIMINAL CHARGE SHALL NOT BE SUBJECT TO SERVICE OF PERSONAL PROCESS
IN CIVIL ACTION ARISING OUT OF THE SAME FACTS AS THE CRIMINAL PROCEEDING
TO ANSWER *** UNTIL HE HAS BEEN CONVICTED IN THE CRIMINAL PROCEEDING,
OR IF ACQUITTED, UNTIL HE HAS HAD REASONALE OPPORTUNITY TO RETURN
TO THE STATE FROM WHICH HE WAS EXTRADITED,"

[re—printed from N.Y.S. McKinney's CPL § 570.58 (2011) (underlines and all-

caps formats added)], and CPL 570.12 of Article Five Hundred Seventy is known

as "THE UNIFORM CRIMINAL EXTRADITION ACT," and CPL § 580.20 is known as the

AGREEMENT ON DETAINERS, which requires a detainer to be formulated as mandated

by the National INTERSTTE AGREEMENT ON DETAINER [ # JC0012—JC0026, at JC0015],

documented that in the evening of 11/9/87 (a) Correction Officer arias

Victor, SH. # 9419 and (b) his brother Cesar arias accused Plaintiff

Candelaria of Possessing (i) a .38 Caliber revolver which (ii) NYPD Officer

John Silva, SH. # 2671 documented as a Serial # 288659LW "GUN RECOVERED BY

CORRECTION OFFICER ARIAS VICTOR, SH. # 9419" [see e.g. Document JC0015]. ²

---

² "THE [EXTRADITION] TREATY ONLY JUSTIFIED [DEFENDANT'S] DELIVERY ON THE GROUND
THAT HE WAS PROED TO BE GUILTY OF MURDER ... IT DOES NOT FOLLOW AT ALL
THAT SUCH MAGISTRATE WOULD HAVE DELIVERED HIM ON ... CRUEL AND UNUSUAL
PUNISHMENT ... [A CHARGE] OF A VERY UNIMPORTANT CHRACTER WHEN COMPARED
WITH THAT OF MURDER,"
said the Court in U.S. v. RAUCHER, 119 U.S. 407, at 432 (1886)( MATERIAL IN BRACKET ADDED)].

38 .    The undersigned is unaware of any decision by the Court of Appeals for the Second Circuit on the issue.

39.    In July, 2001, a bill denominated S5110 was enacted, amending the "Son-of-Sam" Law, New York Exec. Law § 632-a, previously in effect in New York State, in the following ways:

a.    It expands the reach of the law from its prior jurisdiction over "profits from a crime" to include all "funds of a convicted person," which is defined to mean "all funds and property received from any source by a person convicted of a crime or by the representative of such a person." S5110, Ch. 62 Laws of 2001.

b.    It defines "convicted person" to include, *inter alia,*

i.    inmates confined by DOCS, *Id.,* § 1(c)(i);

ii.    persons on parole, conditional release, other forms of post-conviction supervised release, or otherwise subject to an undischarged sentence, *Id.,* § 1(c)(ii);

iii.    persons who are no longer prisoners or on supervised release, but who have received funds "paid to such person as a result of any interest, right, right of action, asset, share, claim, recovery or benefit of any kind that the person obtained, or that accrued in favor of such person, prior to the expiration of such sentence, term or period, and includes any recovery or award collected in a lawsuit . . . where the right or cause of action accrued prior to the expiration or service of such sentence. . ." *Id.,* § 1(c)(iii); and

iv.    persons who are no longer subject to any term of imprisonment or supervised release, but who were convicted of violent felonies, manslaughter in the second

degree, criminally negligent homicide, or a sex offense, and whose term of incarceration or supervised release has ended within the past ten years. *Id.*, § 1(c)(iv).

      c.     It requires every entity that knowingly contracts for, pays or agrees to pay any funds of a convicted person in excess of $10,000, to notify the Crime Victims Board of the payment "as soon as practicable," under penalty of a fine treble the amount of the funds for failure to so report. *Id.*, § 2(a)(ii) and 7(b)(i).

      d.     It requires the Crime Victims Board to notify all known crime victims (or their representatives) of the existence of funds of a convicted person *Id.*, § 2(b), and it extends all applicable statutes of limitations governing actions by crime victims for money damages from persons convicted of the crimes of which they are victims for three years from the date of discovery of any funds of a convicted person as defined in the bill. *Id.*, § 3.

      e.     It permits the Crime Victims Board to attach or apply for other provisional remedies against the funds of a convicted person upon receipt of notice that the crime victim intends to file a civil action for damages. (The Crime Victims Board previously had the authority to apply for provisional remedies only upon receipt of notification that a victim had commenced such an action.)

      f.     S5110 also amends New York Civil Practice Law and Rules § 5205 by adding a new subdivision, (k), which provides, *inter alia*:

> notwithstanding any other provision of law to the contrary, where the judgment involves funds of a convicted person as defined in paragraph (c) of subdivision one of section six hundred thirty-two-a of the executive law, and all or a portion of such funds represent compensatory damages awarded by judgment to a convicted person in a separate action, a judgment obtained pursuant to such section six hundred thirty-two-a shall not be subject to execution or

enforcement against the first ten percent of the portion of such funds that represents compensatory damages in the convicted person's action; provided, however, that this exemption from execution or enforcement shall not apply to judgments obtained by a convicted person prior to the effective date of the chapter of the laws of two thousand one which added this sentence or to any amendment to such judgment where such amendment was obtained on or after the effective date of this subdivision.

40.     The 2001 amendments to the "Son of Sam" Law were enacted after DAVID McCLARY, who was serving a sentence of life imprisonment for the murder of New York City Police Officer Edward Byrne was awarded a jury verdict of $660,000.00 for violation of his constitutional rights by employees of the New York State Department of Correctional Services. *McClary v. Coughlin*, 87 F. Supp. 2d 205, 207 (WDNY 2000); the award was remitted to $237,500.00 *Id.* at 220; and the reduced judgment was affirmed on appeal by the Court of Appeals for the Second Circuit. *McClary v. Kelly*, 237 F.3d 185 (2d Cir. 2001).

41.     S5110's legislative sponsors explicitly described McCLARY's federal court judgment as one of the major inspirations for the bill.

42.     The Sponsor's Memo for S5110, contains the following language:

> These shortcomings of the Son of Sam law are best illustrated in the case of David McClary. McClary, who is serving a term of 25 to life in prison for killing New York City Police Officer Edward Byrne in 1988, recently received a $660,000 federal jury award (subsequently found to be excessive and reduced to $237,500 on remittitur) for the "mental stress" of being placed in administrative segregation while in prison. Aside from the fact that DOCS kept McClary from general population for his own protection, the unfortunate consequence was the award could not be used to compensate the family of Officer Byrne because the applicable limitations period had expired and the funds were not "profits of the crime" within the existing "Son of Sam" law.

Sponsor's Memorandum, p. 9.

i. The Entanglement Factor Between Det. Vasaturo And The Kings CO. D.A.:

43.   Besides the Informations REPRINTED IN ¶ 6, ANTE,   document # JC0033,

additionally recorded and an (a)   SILVER GUN" shooting at the victim [id., at

JC0032] and OFFICE OF THE KINGS COUNTY DISTRICT ATTORNEY, "HOMICIDE BUREAU

INFORMATION SHEET," dated 6/24/88, L underspinning the investigation of

"D.A. HOM. # 9424," specifically documented that, as documented:

> "FACTS:
>         DEFENDANTS AND VICTIM  GOT INTO AN ARGUMENT IN AN AFTER HOURS CLUB.
> DEFENDANT LEFT THE CLUB AFTER THE ARGUMENT. WHEN VICTIM LEFT THE CLUB AND
> WAS GETTING INTO IS CAR, DEFENDANT  SHOT THE VICTIM TWO TIMES.
> PROPERTY RECOVERED: .38 CALIBER REVOLVER.
>         VOUCHER # D12747, 90TH PCT., BY P.O. JOHN SILVER, SHIELD # 2671,
> 61 # 12280. (ON 11/9/87, AT 7:35 P.M. THE DEFENDANT WAS OBSERVED IN
> POSSESSION OF  THIS  GUN. THE GUN WAS TAKEN AWAY FROM DEFENDANT BY AN
> OFF-DUTY CORRECTIONS OFFICER, WHO BROUGHT THE GUN TO THE 90TH PCT.).
> NOTE:
>         I AM INFORMED BY DET. VASATURO THAT A BALLISTICS LAB ANALYSIS
> WAS DONE BY DET. ALBANESE OF THE BALLISTICS SQUAD.
> RESULTS OF ANALYSIS: THE BULLET RECOVERED FROM THE  VICTIM'S  BODY
> CAME  FROM  THE  DEFENDANT'S  .38 CALIBER  REVOLVER.
> ACTION TAKEN:
>         DRAFTED   COMPLAINT. COMPLAINT AND WARRANT AUTHORIZED BY JON BESUNDER,"

[quoted from  Document Bearing Bate-stamp # JC0033 (underlines and All-caps

formats added)] and, in regarding thereof,  (b):

> "NO DISTINCTION CAN BE  TAKEN BETWEEN THE GOVERNMENT AS PROSECUATOR AND
> THE GOVERNMENT AS JUDGE. IF THE EXISTING CODE DOES NOT PERMIT
> DISTRICT ATTORNEYS TO HAVE A HAND IN SUCH DIRTY BUSINESS IT DOES NOT
> PERMIT THE JUDGE TO ALLOW SUCH INQUITIES TO PROCEED,"

had said  the Honorable Mr. Justice Holme in his dissenting in  OLMOSTEAD v. u.s.,

277 U.S. 438 (1928) (All-caps formats added)] and, (c) a  Priori,

> "The arresting Officer was not himself  ppossessed of any  factual
> data tending to corroborate the informant's tip that [the  underlying
> victim had been shot and killed with the Serial # 288659LW P.O. John
> Silva had Vouchered on 11/9/87, under Voucher D12747],"

[see e.g. People v. Jennings,  54 N.Y.2d  518,  at 523 (N.Y. Ct. App. 1981)

(quoting Whiteley v. Warden, 401 U.S. 560,  at 568 (emphasis added)], when

evidence    already on record [see e.g.  Tr. 349-362] establishes that as of

June 24, 1988, the latter, the state was fully aware that the  Serial # 288659LW

[ JC0015, JC0033]    "GUN RECOVERED BY CORRECTION OFFICER ARIAS VICTOR, SH.

9419," P.O. John Silva,  SH. # 2671, had Vouchered on 11/9/87, under

Voucher D12747,  had not been the caused of the underlying victim Pedro

Rodriguez's death on 11/9/87.         A consent cannot justify the

unawful arrest [Bumper, 391 U.S. at 549].

g: The Prosecution Knw of the Existence of  UF-61 Complaint # 12, 280
   [JC0012] And Of Arrest Report # K87067769 [JC0013] But Did
   Consciously Disregard The Risk That  The Gun Underspinning  Said
   UF-61 Complaint # 12, 280 And Said Arrest Report # 8K87067769  Was
   Not The "GUN USED IN THE MURDER" Of Pedro Rodriguez


44.   The Presiding A.D.A. David Neier, on behalf of the

STATE OF NEW YORK,  Manded that "THE NEW YORK CITY POLICE DEPARTMENT," Produce

on  "3/13/89," [see e.g. Document Bearing Bate-Stamp # JC0044-for the

first time turned over on 10/23/07], (a) "UF-61, COMPLAINT NUMBER: 12, 280,  date

11/9/87, time 1935," (b) "Arrest Number: [K87 0]67769, from the NYPD Nine O

Precinct or "90" Precinct under the theory that (c) the COLT .38 Caliber

revolver or "GUN" underspinning said UF-61 Complaint # 12, 280 and Said

Arrest Report # "67769 [cf. JC0012-    ] had been presumptively "USED IN

MURDER," and the place of the Murder or occurrence is identified as "4 Grand

Street" [see e.g. DOcument # JC0044] for the first time turned over to

plaintiff's defense Team on 10/23/07 [see e.g. Document Bearing Bate-Stamp

## JC0001-JC0011] among 111 Sheets of Documents,  which included 19- "SUBPOENAS"

[see e.g. Document # JC0005---JC0008], whereas (i) UF-61 Complaint # 12, 280

[see JC0012] made  CROSS-REFERENCE  to NYPD "VOUCHER D12746, D12747, and D12748,

and (ii)  Arrest Report #     K87067769 ("67769") made  CROSS REFERENCE

 to UF-61 Complaint # 12, 280, and to NYPD Voucher ## D12746, D12747, and

D12748 [see e.g. Document Bearing Bate-Stamp # JC0013], and finally     (d)

among the 111 Sheets of Document the Office of the Kings Co. D.A. on 10/23/07,

for the first time included   (i) NYPD PROPERTY CLERK'S INVOICE # D12747,

which imputed to Plaintiff Candelaria ownership POSSESSION OF ONE  SPECIFIC

SERIAL # 288659LW COLT .38, TWO INCH BARREL, CAL   REVOLVER which was

Documented by NYPD Officer John Silva, SH. #  2671 as One  specific

"GUN RECOVERED BY CORRECTION OFFICER ARIS VICTOR, SH. # 9419" executed on

11/9/87 [see e.g. Document  #JC0015] , and (ii) four Serial # 288659LW Rounds.

44.     "COPY OF STATE OF  FLORIDA WAIVER OF EXTRADITION, ARRAIGNMENT CARD,
CENTRAL BOOKING PRISONER"S PROPERTY FORM, STATEMENT OF READINESS
FOR TRIAL, ARREST WARRANT  SUPPORTING AFFIDAVIT, BENCH WARRANT,
TELEPHONE DISPATCH LOG FOR 11/9/87, DETICTIE INDIVIDUAL CASE LONG
COULD NOT BE    LOCATED,"

[accords-Reprinted from document Bearing bate-stamp # JC0009 (All-caps format

added)] "ON THURSDAY, JUNE 30, 1988, THE UNDERSIGNED [DET. VASATURO] PERSONALLY
WENT TO  49 CHAMBER AT (WARRANT DIVISION) TO FILE  AN ARREST WARRANT ON
JUAN CANDELARIA WANTED FOR THE HOMICIDE  OF PEDRO RODRIGUEZ ON  11/9/87.
[i] THE UNDERSIGNED SPOKE TO SGT. ZULBERTI WHO INFORMED ME THAT THIS
WARRANT IS FILED UNDER WARRANT # E8820021. [ii] A TELETYPE MESSAGE WAS
SENT TO DET. MORRISON, METRO DADE MIAMI P.D. INFORMING HER OF THIS WARRANT,"

[re-printed from Document Bearing Bate-Stamp # JC0035 (underlines, materials

in bracket marks and All-caps formats added)], whereas (b):Plaintiff candelaria's

arrest in the State of Florida for presumptive possession of the Newly

Discovered Serial # 288659LW Colt .38 Two Inch Barrel, Colt  "GUN RECOVERED

BY CORRECTION OFFICER ARIS VICTOR, SH. # 9419, which was prior to October 23,

2007, known  as Plaintiff's ".38 Calier Revolver" [see e.g. Plaintiff's

attached Condition to the waiver of extradition agreement dated July10, 1988

July 10, 1988], was documented  by the Office of the Kings Co. D.A. as, in

its own words and phrases:

     "          "A     A GRAND JURY PRESENTATION IS SCHEDULED FOR TUESDAY,
          JULY 12, 1988, AT 10 A.M.
                    NOTIFICATION HAE BEEN ENTERED FOR DET. VASATURO AND P.O. BAKER
          P.O. BAKER OF THE 83rd PRECINCT.
                    THE DEFENDANT, JUAN CANDELARIAS, IS    PRESENTLY IN THE
          CUSTODY OF FLORIDA STATE AUTHORITIES WHERE HE IS BEING HELD ON A
          GUN POSSESSION,"

[accords or re-printed from document Bearing Bate-stamp # JC0037, JC0036,

at JC0036 (underlines and All-caps formats added)], and finally (c), Document

Bearing Bate-stamp # JC0037 documented that:

     "     1. ON SUNDAY, SEPTEMBER 4, 1988, THE UNDERSIGNED [DET. VASATURO],
     IN COMPANY OF DET. MCKEON 83 SQUAD ARRESTED THE ABOVE AT 120 SCHERMERHORN'S
     STREET.

          2. IN VIEW OF THE ABOVE FACTS AND AFTER CONFERRING WITH THE BELOW
     SUPERVISOR  RECOMMENDED CASE CLOSED,"

[re-printed from Document # JC0037 ( (materials in bracket marks and all-caps

formats added)].

h: In Light of What  NYC Medical Examiner Juaquin Gutierrez And NYPD
Ballistician Det. Michael albanese Knew Prior To  June 24, 1988,
What Is The Available Remedy, In Law Or Equity,   In the Absence
Of Forensic Evidence That The Newly discoverede Serial # 288659LW
[JC0015] "GUN RECOVERED BY CORRECTION OFFICER ARIAS Victor, SH. # 9419"
Had Fired The Bullet Which Had Caused The Death of Pedro Rodriguez?

46.   N.Y.S. Common Law recognizes that:

"IF THERE WAS NO LEGAL POWER TO RENDER THE JUDGMENT OR DECREE, OR
ISSUE THE PROCESS, THERE  WAS NO COMPETENT COURT, AND CONSEQUENTLY
NO JUDGMENT OR PROCESS. ALL IS CORAM NON JUDICE AND VOID,"

[²], and (a) that:

"VOID PROCESS IS SUCH AS THE COURT HAS NO POWER TO AWARD, OR HAS NOT
ACQUIRED JURISDICTION TO ISSUE  IN THE PARTICULAR CASE, OR WHICH DOES
NOT, IN SOME MATERIAL RESPECT, COMPLY IN FORM WITH THE LEGAL
REQUISITES OF SUCH PROCESS, OR WHICH
LOSES ITS VITALITY IN  CONSEQUENCE OF NON-COMPLIANCE WITH A CONDITION
SUBSEQUENT, OBEDIENCE TO WHICH IS RENDERED ESSENTIAL,"

[³], and (b):

"AFTER THE FACT JUDICIAL PARTICIPATION CANNOT VALIDATE AN UNLAWFUL ARREST:
ONLY PROBABLE CAUSE EXISTING AT THE TIME OF ARREST WILL VALIDATE THE
ARREST AND RELIEVE THE DEFENDANT OF LIABILITY,"

[*].; consequently, in the absence of forensic proof  beyond a Reasonable

Doubt that the newly Discovered  Serial # 288659LW  Colt .38, Two Inch Barrel,

Caliber revolver imputed to Plaintiff candelaria as a "GUN RECOVERED BY

CORRECTION OFFICER ARIS VICTOR, SH. # 9419" [JC0015] on 11/9/87 UNDER NYPD

PROPERTY CLERK'S INVOICE # D12747" was capable of Discharging any of the

Seven rounds Introduced by the Prosecution during the april, 1989 State

Jury Trial, over Plaintiff's objection, as  People's Exhibit  2B on evidence,

neither  (c) Plaintiff's arrest in   Miami, Florida,  nor  his (d) waiver

of extradition to New York or the consent to extradition was authorized by

state or federal Law. *

---

² Quoted from  People ex  rel. Tweed v. Liscomb-60 N.Y. 559, at 570
(N.Y. Ct. App.  1875); ³  Re-printed from  Fischer v. Lanbein, 103 N.Y. 84,
at  90, 8 N.E. 251 (N.Y. Ct. app.  1886).  * See Broughton v. N.Y.S.,
37 N.Y.2d 451, at 458, 335 N.E.2d 310 (N.Y. Ct. app. 1975).

47. New York State's Common Law recognizes that, in pertinent parts, (a):

"SECTION 12 OF ARTICLE I OF THE NEW YORK STATE  CONSTITUTION CONFORMS
WITH THE FOURTH AMEND REGARDING THE  PROSCRIPTION AGAINST
UNREASONABLE SEARCHES AND SEIZURES, AND  THIS IDENTITY OF LANGUAGE
SUPPORTS A POLICY OF UNIFORMITY IN BOTH STATE AND FEDERAL  COURTS,"

[²], (b) that:

"ALTHOUGH THE  FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION ONLY
APPLIES TO THE UNITED STATES COURTS, WE MUST ASSUME THAT THE WORD
INDICTMENT IN THE FEDERAL CONSTITUTION HAS THE  SAME MEANING AS THE
SAME  WORD IN THE STATE CONSTITUTION,"

[³], and finally that (c):

"THE LANGUAGE OF THE FIFTH  AMENDMENT OF THE FEDERAL CONSTITUTION
IS THE SAME AS THE WORDS IN ARTICLE  1, § 6, OF THE NEW  YORK
CONSTITUTION:  NO PESON SHALL BE HELD TO ANSWER FOR A CAPITAL OR
OTHERWISE INFAMOUS CRIME, *** UNLESS ON PRESENTMENT OR INDICTMENT OF
A GRAND JURY,"

[£].

---

² Quoted from People  v. Ponder, 54 N.Y. 160, at 165, 429 N.E.2d 735,
445 N.Y.S.2d 57 and People  v.  Bigelow, 66 N.Y.2d 417, at 422-423 (N.Y. Ct. App.
1985)(underlines and All-caps formats added)].

³ Quoted from People  v.  Boagdanoff, 254 N.Y. 16, at 34, 171 N.E. 890
(N.Y. Ct. app. 1930), accords People  v.  Perez, 83 N.Y.2d 269, 274,
631 N.E.2d 570 (N.Y. Ct. app. 1994) (underlines and all-caps formats added).

£ Quoted from People  ex rel.  Battista  v.  Christian, 249 N.Y. 314,
at 317-320, at 320 (1928)(citations omitted). CPL  § 200.10 defines  "Indictment."
In People  v.  Grega, 72 N.Y.2d 489, 531 n.E.2d 279 (N.Y. Ct. app. 1988) the
Court outlined the purpose of Indictment, and CPL 200.30 prohibits Duplicitous
Counts. The U.S.  Supreme Court has  taken  notice of the fact that :
"NEW  YORK RETIFIED WITH A PROPOSAL OF NUMEROUS AMENDMENTS AND
A DECLARATION OF RIGHTS WHICH THE CONVENTIN DECLARED COULD NOT BE
VIOLATED AND WERE CONSISTENT WITH THE CONSTITUTION. ONE OF  THESE RIGHTS
WAS  THAT "NO PERSON OUGHT TO BE TAKEN, IMPRISONED OR DEPRIED OF HIS
FREEHOLD, OR BE EXILED OR DEPRIVED OF HIS PRIVILEGES, FRANCHISES, LIFE,
LIBERTY, OR PROPERTY BUT BY DUE PROCESS OF LAW,"

[accords, Twining  v.  New  Jersey, 211 U.S. 78, at 109-111, at 109 (1908)(All-
Caps Formats added)].. N.Y. CPL 260.10 also provides that "EXCEPT AS
OTHERWISE PROIDES IN SECTION 320.10, EVERY TRIAL OF AN INDICTMENT MUST BE
BY  A JURY TRIAL" [id., CPL 260.10][cf. Baldwin  v.  N.Y., 399 U.S. 66 (1970)]
(Sixth and 14th amends. right to a Jury trial when  penalty is imprisonment for
six months or more)]. Had Plaintiff been Tried for Using A Serial # 288659LW
Colt .38 Two Inch Barrel [JC0015] "GUN  ... And its Possession [see JC0015, JC0033]?

48. "PROSECUTIONS MUST BE CONDUCTED IN SUBSTANCES AND WITHOUT ESSENTIAL
CHANGE AS THE CONSTITUTION COMANDS [AND] A CONVICTION OTHERWISE
OBTAINED IS A NULLITY,"

[accords, People ex rel. Battista v. Christian, 249 N.Y. 314, at 319-320,

164 n.E.2d 111 (1928) (materials in bracket marks and all-caps formats added)],

under the Federal Law and Conastitution of the United States:

"IT IS AS MUCH A VIOLATION OF DUE PROCESS TO SEND AN ACCUSED TO PRISON
FOLLOWING CONVICTION OF A CHARGE ON WHICH HE WAS NEVER TRIED AS IT WOULD
BE TO CONVICT HIM UPON                     MADE,"

[quoted from Cole v. State of Arkansas, 33 U.S. 196, at 201-202 (1948)] and

"ALTHOUGH THERE IS A FACTUAL DIFFERENCE BETWEEN  THESE TWO SITUATIONS,
THEY ARE THE SAME IN CRITICAL PART. IN  EACH CASE, POLICE INSTRUDED
UPON PROTECTED FOURTH AMENDMENT INTEREST  UNDER THE PURPORTED
AUTHORITY OF A WARRANT WHICH IS SUBSEQUENTLY REVEALED TO HAVE BEEN
FURNISHED, AT THE TIME OF THE INSTRUCTION, NO JUSTIFICATION FOR SUCH
POLICE CONDUCT,"

[id., 54 N.Y.2d at 523, 430 N.E.2d 1282, 446 N.Y.S.2d 229, at 231 (citations

omitted and All-caps  Formats  and underlines added)],

under n.Y.S. Law (a):

"AFTER THE  FACT JUDICIAL PARTICIPATION CANNOT VALIDATE AN UNLAWFUL
ARREST: ONLY PROBABLE CAUSE EXISTING AT THE TIME OF ARREST WILL VALIDATE
THE  ARREST AND RELIEVE THE DEFENDANT OF LIABILITY,"

[accords, Broughton v. State of New York, 37 N.Y.2d 451, at 458,

335 N.E.2d 310, 373 N.Y.S.2d 87 (N.Y. Ct. App. 1975)(underlines and all-

caps formats added)] and, with respect to any potential remedy underspinning

an UNLAWFUL ARREST and  DETENTION without probable cause  and without

expectation of ever obtaining a conviction against an actually innocent

citizen of the united States who has been held for over twenty years

without a conviction or sentence underspinning   the underlying accusation,

as newly  discovered  evidence being proffered herein as Documents number

JC0012-26, compare with JC0037-  27-JC0037 now reveal],   (b):

"THE PLAINTIFF IS ENTITLED TO COMPENSATION FOR LOSS TIME, FOR PHYSICAL
DISCONFORT OR INCONVENIENCE, AND FOR ANY  RESULTING PHYSICAL ILLNESS
OR INJURY TO HEALTH,"

[accords, JAEGLEY V. Coughlin, 439 F.3d 149, at 154 (2d Cir. 2006)]].

49. Between his admission to the DOCS on 12/26/89 and  1997,
Plaintiff candelaria was denied medical care Attention and; consequently,
in 1997, Plaintiff candelaria was allowed to develope End-Stage renal
Disease ("ESRD") and was connected to a  Hemodialysis/Peritoneal
Dialysis machine and, indeed:

> "BETWEEN 1997 AND 2007, MR. CANDELARIA WAS HOSPITALIZED MORE THAN
> 25 TIMES. (SEE TABLE.) NO LESS THAN 20 OF THESE ADMISSIONS WERE
> FOR ACCESS FOR DIALYSIS. HE RECEIVED A DECEASED DONOR RENAL TRANSPLANT
> IN OCTOER 2005. HIS RECORDS INDICATE THAT HE HAS NO LARGE VEINS
> AVAILABLE IN HIS UPPER ETREMITIES FOR FUTURE HEMODIALYSIS ACCESS
> AND  THAT HE HAS  FAILED PERITONEAL DIALYSIS.  GIVEN  THAT THE
> LIFE EXPECTANCY OF A  DECEASED DONOR RENAL TRANSPLANT IS 10-15 YEARS,
> MR. CANDELARIA WOULD BE EXPECTED TO REUIRE DIALYSIS AGAIN BY 2020.
> HIS PHYSICIANS' ABILITY TO MAINTAIN HIM ON DIALYSIS WILL  BE
> SEVERELY LIMITED  DUE TO THE LOSS OF MULTIPLE ACCESS POINTS PRIOR TO
> HIS KIDNEY TRANSPLANT."

on October 11, 2005 [reprinted from the 2/2/09  EXPERT REPORT FILED BY
DR. JEFFREY SILBERZWEIG, M.D., 165 Delhi Road, Scarsdale, N.Y. 10583,
Telephone # (914) 484-3022 , filed with a Federal Court in a  Civil
Right Actions entitled Candelaria  v. St. Agnes Hospital, 1: 01-CV-08594-LTS-
RLE (SDNY), copy of  which is affixed herewith as Document Bearing Bate-Stamp
# JC00  JC0C  (All-caps Formats added)][compare, Anderson  v. Rochester-
Genesee  Reg'l Transp. Auth., 337 F.3d 201, at 205, n. 4 (2d Cir. 2003)
(TAKING JUDICIAL NOTICE OF RELATED DISTRICT COURT DECISION) and  Conopco, Inc. -
v. Roll int'l., 231 F.3d 82, at 86 n. 3 (2d Cir. 2000)(TAKING JUDICIAL
NOTICE OF CALIFORNIA STATE COURT DCISION)], and there is no valid reason
why this Honorable Court shall not take JUDICIAL  NOTICE OF THE EXPERT
REPORT OF DR. JEFFREY SILBERZWEIG, M.D., which had been filed in a
sister USDC, SDNY, underspinning Plaintiff Candelaria and involving the
same KIDNEY treatment [or Lack thereof], in light of Plaintiff's PRO SE
status and lack of wherewithal to employ an expert in this action
[cf. Erickson  v. Pardus, 127  S.Ct. 2197, at 2199-2200 (2007)("Erickson")].

IV—THE SPECIFIC WRONG COMPLAINING OF AND THE GRAVAMENS OF THE UNDERLYING
CAUSES OF ACTION FOR INVOLUNTARY SERVITUDES-PROSECUTORIAL BAD FAITH-
WRONGFUL IMPRISONMENT-AND CRUEL AND UNUSUAL PUNISHMENT-IS THAT THE DEADLY
WEAPON UNDERSPINNING COUNTS  TWO THROUGH  FIVE OF THE SUPERSIDING INDICTMENT
# 8897/88  CANNOT BE READ-UNDER THE PRINCIPLE OF  EQUITY- TO BE DIFFERENT
OR DISTINCT THATN THE NEWLY DISCOVEREDE SERIAL # 288659LW COLT .38 UNCAPABLE
OF DISCHARGING LIVE AMMUNITION  CALIBER REVOLVER [JC0015, JC0033] IMPUTED
TO PLAINTIFF CANDELARIA AS A "GUN RECOVERED BY CORRECTION OFFICER ARIAS
VICTOR, SH  # 9419" [JC0015] UNDER NYPD PROPERTY CLERK`S INVOICE # D12747
WHICH SUBSEQUENTLY RESULTED IN THE ORIGINAL INDICTMENT # 9954/87 [JC0012-JC0018]

50.  Supersiding Indictment # 8897/88,  voted in Plaintiff's absence

following his 9/4/88 extradition to New York, charged Plaintiff with FIVE

COUNTS of Infamous  Or  Serious Crimes [see e g  Document ## JC0040-JC0041]

and, in regarding to the "SCHEME" of said indictment, the presiding Judge

Lombardo, in open court, conceded that   A:

   a. "    This indictment contains  five counts. Unless I'm mistaken, the
      scheme of the [8897/88] indictment refers to two incidents.
   b.      Count Two refers to  the  count of intentional murder.
   c.      Count Two refers to the criminal possession of a weapon in the
      second degree, again  referring to  this  murder.
   d.      Count Three refers  to  a weapon in the  third degree, again referring
      to that  murder.
   e.      Now, it won't make any sense in the  indictment if  Count Four
      and  Five relate to the  same count I have just related. I'm assuming
      that  Count Four  has to do with the  separate incident where the  gun
      [same gun] was  draw and  not used, and  criminal possession of  Three
      refers to the  same incident,"

[taken from the April, 1989 State Trial  Transcript containing  a  pre-jury

instruction conference informing plaintiff for the first time as to the scheme

of the supersiding indictment 8897/88,  at pp. 396-397 (emphasis and

jr bracket marks added)] and,

     "UNLESS THE IDENTICAL CHARE AGAINST THE DEFENDANT CONTAINED IN THE
     INDICATMENT WAS ESTABLISHED, BEYOND A REASONABLE DOUBT, HE SHOULD BE
     ACQUITTED, THOUGH  THE EVIDENCE IN THE CASE MIGHT SHOW, OR TEND TO SHOW,
     SOME OTHER VIOLATION BY HIM OF THE LAW, AND  THAT THE FACTS AND
     CIRCUMSTANCES ADDUCED WERE TO BE CONSIDERED ONLY TO PROVE THE MAIN
     FACT CHARGED,"

[accords, People v. McKane, 143 N.Y. 455, at 476, 38 N.E. 950

(N.Y. Ct. app. 1894), accords, People v. Perez, 83 N.Y.2d 269, at 274

(All-Caps Formats added)]. Had Petitioner Candelaria been Tried, Convicated,

Sentenced or Acquitted of the Offenses/charges  for which Plaintiff

Or Petitioner candelaria been indicted?